IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 21, 2008 Session

## HARRY W. LOFTON v. NELDA JOAN LOFTON

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007083-03     James F. Russell, Judge**

---

**No. W2007-01733-COA-R3-CV - Filed December 30, 2008**

---

This is a divorce case terminating a 40 year marriage. Husband/Appellant appeals the trial court's division of marital property, award of alimony *in futuro*, and award of attorney's fees to Wife/Appellee. In addition, Husband/Appellant contends that the trial court erred in granting Wife/Appellee's motions to re-open proof, and in denying Husband/Appellant's motion for summary judgment. We affirm as modified herein.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

C. Suzanne Landers, Memphis, TN, for Appellant
Vicki J. Singh, Memphis, TN, for Appellant
Margaret A. Reid, Memphis, TN, for Appellant

William M. Monroe, Memphis, TN, for Appellee

## OPINION

Appellant Harry W. Lofton and Appellee Nelda Joan Lofton were married on November 20, 1964. Two children were born to the marriage; one of the children died in 1993, and the other child is now an adult. The parties separated on or about December 15, 2003. Ms. Lofton has a high school education, and was 59 years old at the time of the original hearing in this case. Mr. Lofton has two years of college education and was 60 years old at the time of the hearing. Mr. Lofton is the owner of a Nationwide insurance agency and has been in the insurance business for over 25 years. Ms. Lofton is a licensed insurance agent, but she has not worked outside the home for over 16 years.

On or about December 19, 2003, Mr. Lofton filed a complaint for divorce against Ms. Lofton alleging grounds of inappropriate marital conduct and irreconcilable differences. The case was

assigned to Division IX of the Circuit Court at Shelby County. On January 9, 2004, Ms. Lofton filed her answer and counter-complaint for divorce, citing grounds of inappropriate marital conduct and irreconcilable differences. In her counter-complaint, Ms. Lofton asserts, in pertinent part, that "[m]any of the marital assets are liquid assets and are subject to being hidden or spent. Further, [Mr. Lofton] is able and capable of hiding and converting the marital property thus depriving [the trial court] of its lawful jurisdiction over said assets." On February 17, 2004, Mr. Lofton answered the counter-complaint for divorce, admitting inappropriate marital conduct on his part. In his answer, Mr. Lofton does not deny Ms. Lofton's allegation concerning the marital assets. Following Ms. Lofton's substitution of counsel, a consent order on *pendente lite* support was filed on May 13, 2004, wherein Mr. Lofton was ordered to pay $2,000.00 per month as temporary spousal support. In addition, Mr. Lofton was ordered to pay the mortgage and utilities on the marital home and to maintain Ms. Lofton's healthcare insurance.

The matter was referred for mediation, and the trial was scheduled for February 21, 2005. Ultimately, the mediation did not take place and the matter was transferred to Division II of the circuit court for trial.

The initial hearing in the case was held on February 21 through February 23, 2005. The parties were instructed to return to court on March 3, 2005 for the ruling. On that day, the court expressed concern that Mr. Lofton was receiving income from the sale of securities in addition to the income from his insurance business and suggested that the proof be re-opened. Ms. Lofton then made an oral motion to reopen the proof, which motion was granted by order of April 8, 2005. This order was later vacated by consent order of April 19, 2005. On April 22, 2005, the trial court announced its ruling; however, no final order on the divorce was entered at that time.[1]

On June 16, 2005, Ms. Lofton filed a second motion to re-open the proof. Ms. Lofton's motion was premised on the fact that Mr. Lofton had purchased a house valued at approximately $400,000.00 (the "Woodbrook Circle House"), paying $40,000.00 down. In support of her motion, Ms. Lofton argued that, because no final decree of divorce had been entered, the house purchased by Mr. Lofton was a marital asset. Moreover, Ms. Lofton sought a hearing on the source of the down-payment made by Mr. Lofton, and the income necessary to support the purchase. The trial court granted Ms. Lofton's motion to re-open proof by order of July 28, 2005. Prior to the hearing, the parties stipulated to the admission of the settlement statement, loan application, commitment letter, and the down-payment check that were executed in relation to Mr. Lofton's purchase of the Woodbrook Circle House. On June 6, 2006, the trial court entered an "Order Narrowing Scope of Proof," which purports to limit the scope of the proof to the "issue of the means by which [Mr. Lofton] purchased [the Woodbrook Circle House]."

On January 26, 2007, Mr. Lofton filed a motion for (partial) summary judgment regarding the purchase of the Woodbrook Circle House. On March 9, 2007, the court heard arguments on the

---

[1] Although both parties submitted proposed orders in this case, from the record, it appears that the parties ultimately could not agree on the language of the final order of divorce.

motion for summary judgment and by order of April 10, 2007 denied the motion. A subsequent motion to rehear and a motion for a Tenn. R. App. P. 9 interlocutory appeal were also denied.

On May 8, 9, and 10, 2007, limited proof was heard. The trial court announced its ruling on May 10, 2007. The Final Decree of Divorce was entered on July 5, 2007. The Final Decree incorporates, by reference, the trial court's April 22, 2005 and May 10, 2007 findings, which were made from the bench.

Mr. Lofton appeals and raises several issues for review. We restate those issues as follows:

I. The trial court erred in granting Wife's motions to re-open proof.
II. The trial court demonstrated bias toward Husband amounting to reversible error.
III. If the trial court did not err in re-opening proof, then it erred in failing to enforce the narrowing order and/or in failing to grant Husband's motion for summary judgment.
IV. The trial court erred in its classification and distribution of marital property.
V. The trial court abused its discretion in the amount of the alimony *in futuro* awarded to Wife.
VI.. The trial court abused its discretion in awarding Wife attorney's fees in the amount of $55,106.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp***., 910 S.W.2d 412, 415 (Tenn.1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***see also Walton v. Young***, 950 S.W.2d 956, 959 (Tenn.1997).

## First Motion to Re-open Proof

The trial court granted two motions to re-open proof in this case. The first motion to re-open proof was made by Ms. Lofton at the March 3, 2005 hearing. Because the trial court ultimately vacated its decision to re-open proof regarding Mr. Lofton's securities license, Mr. Lofton's objection seems to stem from the trial court's alleged bias toward him rather than from the re-opening of the proof. Therefore, we will discuss the alleged bias before continuing with our review of the second motion to re-open proof.

**Bias**

It is undisputed that no motion for recusal was filed by Mr. Lofton in this case. We have previously held that motions to recuse "must be filed promptly after the facts forming the basis for the motion become known ... and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." ***Davis v. State Dept. of Employment Sec.***, 23 S.W.3d 304, 313 (Tenn. Ct. App.1999) (citations omitted). Because Mr. Lofton did not file a motion for recusal, we would usually hold that he has waived such right in conjunction with the hearings before the trial court. However, even in the absence of a motion to recuse, if the apparent bias of a trial court is sufficiently egregious, then it may, nonetheless, require *sua sponte* recusal or, at least, transfer to another judge upon remand. In ***Radebaugh v. Radebaugh***, No. M2005-02727-COA-R3-CV, 2006 WL 3044155 (Tenn. Ct. App. June 29, 2006), this Court determined that the judge's comments were sufficiently biased to warrant transfer to another judge on remand. In ***Radebaugh***, we recognized that litigants are entitled to the "cold neutrality of an impartial court" and have a right to have their cases heard by fair and impartial judges. ***Kinard v. Kinard***, 986 S.W.2d 220, 227 (Tenn .Ct. App.1998) (quoting ***Leighton v. Henderson***, 414 S.W.2d 419, 421 (1967)). To that end, a judge should recuse himself or herself if there is any doubt regarding the judge's ability to preside impartially, or if the judge's impartiality can reasonably be questioned. ***See State v. Hines***, 919 S.W.2d 573, 578 (Tenn.1995). Under Canon 3 of the Code of Judicial Conduct, a judge is required to recuse himself or herself when "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Tenn. R. Sup. Ct. 10, Canon 3(E)(1)(a). However, not all bias and/or prejudice constitutes grounds for recusal and/or rehearing. As discussed by this Court in ***Caudill v. Foley***, 21 S.W.3d 203, 215 (Tenn. Ct. App.1999):

> Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are what constitute disqualifying bias or prejudice. For example, where a judge stated that he "could not stand" a certain law enforcement officer and would not accept cases initiated by him, it was found that his personal feelings and intense dislike of the officer were improper. However, neither bias nor prejudice refer to the attitude that a judge may hold about the subject matter of a lawsuit. That a judge has a general opinion about a legal or social matter that relates to the case before him or her does not disqualify the judge from presiding over the case. Despite earlier fictions to the contrary, it is now understood that judges are not without opinions when they hear and decide cases. Judges do have values, which cannot be magically shed when they take the bench. The fact that a judge may have publicly expressed views about a particular matter prior to its arising in court should not automatically amount to the sort of bias or prejudice that requires recusal.

*Id*. at 215 (citing Jeffrey M. Shaman et al., Judicial Conduct and Ethics § 4.04, at 101-02 (2d ed.1995) (footnotes omitted).

Mr. Lofton asserts that the trial court "apparently misjudged Husband early in the divorce proceedings, announcing its distrust of Husband, and reiterated these credibility 'concerns' repeatedly throughout the subsequent litigation." Specifically, Mr. Lofton cites the March 3, 2005 hearing as proof of the trial court's alleged prejudice toward him. The trial court convened on March 3, 2005 purportedly to announce its ruling; however, on that date, the court asked the parties' attorneys into chambers and revealed that his courtroom clerk had asked for, and been given, Mr. Lofton's business card after the February trial. The court expressed concern that the business card stated "securities offered," and that this term "raised a very red flag...because it signaled the possibility that this is yet another business enterprise out there that was not mentioned in the proof of this case." Mr. Lofton contends that, rather than suggesting a re-opening of proof, the trial court should have "taken judicial notice that the selling of cash value life insurance policies were investable assets and required a Series 6 license."[2] We note that the trial court specifically stated its reason for bringing up the business card:

> The Judicial Code of Ethics requires trial judges to make disclosures about anything that might, in any stretch of the imagination, be interpreted as affecting the judge's ability to be fair and impartial.

However, the trial court stressed that the business card incident would have no bearing on its ability to be impartial in the case:

> I have explained to the lawyers and am now explaining to the parties that this development does not in any way affect my ability to be fair and impartial in your case.

Following this statement, the trial court asked the attorneys "whether or not...we have any problem that we need to visit about further." Neither party sought further discussion on the business card matter. From the trial court's comments and actions, we find nothing on which to base a finding of bias toward Mr. Lofton. In fact, due to the ultimate decision not to take further proof on Mr. Lofton's securities license, we cannot conclude that Mr. Lofton was harmed in any way from the trial court's disclosure that it had seen the business card. When announcing its ruling the court again stated:

> Note this and note this well. The findings of fact which are made today will include no reference to information on business cards or any information from telephone directories. No issue is decided based upon any such facts. Those facts merely formed the basis of

---

[2] At the March 3, 2005 hearing, the trial court specifically suggested that "the proof could be reopened and further trial proceedings held. Following this statement, counsel for Ms. Lofton made an oral motion to reopen the proof, which motion was granted.

the motion to reopen the proof and were the basis upon which the Court granted that motion and nothing more.

From our review of the full record, we conclude that the trial court was good to its word.

At the February 2005 hearing, Ms. Lofton's expert William Vance, a forensic CPA, indicated that Mr. Lofton might be using his association with his daughter, Ms. Lofton-Welles to hide business assets. Although Mr. Vance conceded that he could find no empirical evidence to conclusively support his suspicions (in part, because he was denied access to the "books and records of the Lofton-Welles Agency"), he testified that there were "oddities" in the accounting practices of the Lofton Insurance Agency, and that there was "certainly the ability to manipulate income." Mr. Vance's testimony gave the trial court yet another reason to suspect that Mr. Lofton was being less than honest with the court–"The Court shares the suspicions expressed by the witness William Vance as to the apparent...less than arms length...nature of the business relationship between the Lofton-Welles Agency and the Harry Lofton Agency." We have reviewed the entire record in this case and conclude that the trial court's suspicions concerning Mr. Lofton's income and business dealings were well founded. The fact that the trial court expressed concern arising from the evidence does not, by itself, lead us to conclude that the trial court held such personal bias toward Mr. Lofton as to warrant recusal. At the close of all proof, the trial court specifically stated that "Harry Lofton has been deceitful with his wife, he has been deceitful with the Court, and it would appear he has even been deceitful with his own attorneys." While the court's statement goes to Mr. Lofton's personal activities, in light of the record as a whole, we believe that the trial court's assessment of Mr. Lofton has a reasonable basis. The fact that the court points out Mr. Lofton's deceit, however, goes more to the issue of his credibility as a witness rather than any personal bias toward Mr. Lofton. Throughout the entire proceedings, the trial court was simply seeking to discern the salient facts from the conflicting testimony, a task made more difficult by Mr. Lofton's lack of candor. From the full record, we cannot conclude that either the proceedings before the trial court, or the comments made by Judge Russell, demonstrate such egregious bias toward Mr. Lofton as to warrant a re-trial of this case.

**Second Motion to Re-open proof**

Although Mr. Lofton implies that the delay in entry of a final order of divorce was the fault of the trial court–"[f]ollowing the oral ruling of the Court on April 22, 2005 the Court appeared to have dug in its proverbial heels rather than proceed to finalize the divorce"–the record does not support this allegation. Rather, it appears that the delay in the entry of an order in this case was due to the parties' inability to agree upon the wording of that order. However, there is nothing in the record from which to conclude that either party was engaging in a tactical decision to postpone adjudication of the case. Regardless of the reason for the delay, it is undisputed that, following the trial court's announcement of its ruling in April 2005 (but prior to entry of the final order), Mr. Lofton proceeded to purchase the Woodbrook Circle House. Based on the evidence initially presented, this purchase with its corresponding $40,000.00 down payment raised concerns about Mr. Lofton's purported financial condition. Because of this concern, Ms. Lofton moved the court to

reopen the proof, which motion was granted. Mr. Lofton asserts that allowing the proof to be re-opened was an error.

As stated by our Supreme Court in ***Simpson v. Frontier Community Credit Union***, 810 S.W.2d 147 (Tenn.1991):

> Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal...

> It is within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge thereon will not be set aside unless there is a showing that an injustice has been done.

*Id*. at 149 (internal citations omitted).

The trial court was concerned that Mr. Lofton had not been forthright about his financial condition. The evidence offered at the initial hearing raised a question about his ability to purchase a $400,000.00 home. Mr. Lofton's purchase, in fact, seems to solidify the trial court's concerns regarding his credibility. Consequently, we are unable to conclude that the trial court erred in granting Ms. Lofton's motion to re-open the proof to address the source of funds utilized to purchase the Woodbrook Circle House.

After the trial court granted Ms. Lofton's second motion to re-open proof, Mr. Lofton made an oral motion to narrow the scope of that proof to the means by which he purchased the Woodbrook Circle House. A transcript of the hearing on Mr. Lofton's motion to narrow the scope of proof is not contained in the record. However, at the hearing on Mr. Lofton's motion to seek interlocutory appeal, the trial court clarified its reasons for re-opening the proof:

> Maybe there is a misunderstanding about what transpired with the granting of the motion to reopen proof. That motion was granted based on newly discovered evidence, based on that newly discovered evidence may impact on all of the issues that have been decided. It is not my intention to receive evidence that has already been received. We can receive whatever the evidence is, and then you lawyers can argue how that impacts on decisions already made. They cover everything from spousal support, distribution of property, distribution of debt, and perhaps even credibility of at least one witness, which may impact on how those other issues were decided.

The trial court correctly determined that any new evidence concerning Mr. Lofton's financial condition would bear upon any prior decision it made regarding the marital estate. These decisions necessarily include the division of marital property and debt, as well as spousal support. The trial court's primary objective in this case was to ascertain an accurate picture of Mr. Lofton's finances. If Mr. Lofton's financial situation was shown to be other than what was initially represented to the court, then justice and equity dictate that the trial court should revisit its previous rulings concerning the distribution of marital property and spousal support. We have reviewed the transcript of the proceedings conducted following the re-opening of proof and have concluded that the trial court did not err in allowing additional evidence to be submitted by the parties.

### Summary Judgment

Mr. Lofton filed a motion for summary judgment after Ms. Lofton filed her second motion to re-open proof. As grounds for his motion, Mr. Lofton argues that no disputed material facts exist as to the circumstances surrounding his purchase of the Woodbrook Circle House, and that there is no need to take further proof regarding this transaction. Mr. Lofton contends that he is entitled to summary judgment because the Woodbrook Circle House was purchased with assets that were awarded to him in the division of marital property, which became his separate property.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622.

Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. See **Warren v. Estate of Kirk**, 954 S.W .2d 722, 723 (Tenn.1997).

When denying the motion for summary judgment, the trial court made the following relevant statements:

> Before the Court is Mr. Lofton's motion for summary judgment. As we all know, summary judgment contemplates that there is no genuine issue as to any material fact, and that based upon the facts that are not in dispute, the moving party is entitled to judgment as a matter of law. This is a divorce case for goodness sake. This poor Judge is aware of no authority whatsoever that summary judgment is ever appropriate in a divorce case. If there is, I invite someone to show it to me. The Court well knows and believes that there is no authority that a summary judgment is appropriate to where a case has been tried, decided, and motion to reopen the proof has been granted. With all due respect, the motion must be denied.

In support of his motion, Mr. Lofton executed an affidavit, in which he stated that he paid $3,000 earnest money toward the purchase of the Woodbrook Circle House. Ms. Lofton responded by asserting that there "is a material issue of fact in that Husband made false statements in his application for a loan, and the value of the equity is marital property and should be divided between the parties according[ly]...." The parties also disputed: (1) whether the Woodbrook Circle House was marital property, (2) whether Mr. Lofton or his paramour paid the earnest money, (3) the value of the Woodbrook Circle House, and (4) the means by which Mr. Lofton purchased same. Because a dispute of material fact existed, we conclude that the trial court did not err in denying Mr. Lofton's motion for summary judgment.

## Division of Marital Property

In its May 10, 2007 ruling the trial court notes numerous discrepancies between the income and expenses alleged by Mr. Lofton in his initial Rule 14(d) affidavit and the new evidence surrounding the purchase of the Woodbrook Circle House. The trial court specifically notes that these discrepancies "confirm much of the Court's earlier suspicions [concerning Mr. Lofton's credibility]."

When making its division of property, the trial court must first classify the property. Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tenn. Code Ann. § 36-4-121(a) "provides only for the division of marital property." **See also Batson v. Batson**, 769 S.W.2d 849, 856 (Tenn. Ct. App.1988). Tenn. Code Ann. § 36-4-121(b)(1) defines "marital property," in relevant part, as follows:

(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

Separate property is defined as:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2).

In light of these definitions, we conclude that the trial court correctly classified the Woodbrook Circle House as marital property because Mr. Lofton purchased (or at least acquired a right to purchase) this property prior to the final hearing held in this case. After classifying the property, the trial court must then divide the marital property equitably between the parties. Trial courts are afforded great discretion when classifying and dividing property, and their decisions are entitled to great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App.2002).

Dividing a marital estate is not a mechanical process; the goal is to fashion an equitable remedy by considering the non-exclusive factors set forth in Tenn. Code Ann. § 36-4-121(c) (2005):

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, financial liability and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, ***Cohen v. Cohen***, 937 S.W.2d 823, 832 (Tenn.1996); ***Ellis v. Ellis***, 748 S.W.2d 424, 427 (Tenn.1988) or because each party does not receive a share or portion of each marital asset. ***Cohen***, 937 S.W.2d at 833 (citing ***Brown v. Brown***, 913 S.W.2d 163, 168 (Tenn. Ct. App.1994)).

The trial court divided the marital property, in relevant part, as follows:

> A.  Items awarded to Wife:
>
> > 1.  The marital residence at 3615 Davieshire Cove; and
> > 2.  The net sales proceeds from the sale of the real property located in Arkansas; and

3.    The balance in all accounts held with the Trustmark Bank; and

4.  The Oppenheimer Fund; and

5.  The Garthmore Fund; and

6.  The Nationwide SEP/IRA; and

7.  The cash value of the life insurance policy insuring Wife's life in the approximate amount of $80,000.00; and

8.  The 2002 Cadillac Deville; and

9.  One cemetery plot in Memorial Park; and

10.  Fifty percent (50%) of the DCIC net of taxes.

B.  Items awarded to Husband:

1.    Residence located at 10183 Woodbrook Circle together with the household furniture and furnishings; and

2.  Lofton Insurance Agency, its fixtures and furniture, its assets (including the Nationwide Federal Credit Union checking and savings accounts), and its liabilities (including the Capital Access loan); and

3.  The cash value of the Second To Die life insurance policy insuring the parties' lives in the approximate amount of $600,000.00; and

4.  The remaining cash value of the life insurance policy insuring Husband's life in the amount of approximately $350,000.00; and

5.  The 2003 Cadillac Escalade and the 1997 Nissan Pathfinder; and

6.  One cemetery plot in Memorial Park; and

7.  The sale proceeds from the sale of all personalty located in the Arkansas property; and

8.   One hundred percent (100%) of the EE net of taxes; and

9.  Fifty percent (50%) of the DCIC net of taxes.

In addition, and "[a]s  further distribution of [marital] property and for the preservation of the marital residence as an asset of the marital estate," Mr. Lofton was ordered to continue paying all expenses and upkeep associated with the marital residence (which property was awarded to Ms. Lofton). Mr. Lofton was also ordered to procure a life insurance policy insuring his life in the face amount of $700,000.00, naming Ms. Lofton as the beneficiary thereof.

_____Having determined that the Woodbrook Circle House is a marital asset, and considering the value of that property, we cannot conclude that the division of marital property in this case was inequitable. This was a 40 year marriage. Ms. Lofton has not been employed outside the home for over 16 years. Furthermore, the proof indicates that Ms. Lofton suffers from numerous health issues, which make it impossible for her to work. Conversely, Mr. Lofton is in good health, and has the means to earn a substantial living. This Court was faced with a similar situation in the very recent case of **_Hill v. Hill_**, No. M2007-00049-COA-R3-CV, 2008 WL 5100925 (Tenn. Ct. App. Dec. 3, 2008). In **_Hill_**, the parties had been married for 25 years. Although the trial court's division of marital property was far from equal, this Court affirmed the decision of the trial court on the following grounds:

> In the case before us, based on the duration of the marriage combined with all the economic factors and the relative situations of the parties, we cannot say that the trial court's distribution was not equitable or reasonable. Wife is forty-six years old and has not worked outside the home in twenty years. She remains deeply involved in the upbringing of five minor children, the youngest of whom was five years old at the time of trial. Although she has a nursing degree, it would take a large investment of money and time before her certification could be restored.
>
> In contrast, Husband has had a successful career in sales and has admitted to earning over 14,000 per month. There is thus a huge disparity between Husband's and Wife's abilities to acquire assets and earn income. As the trial court observed, Husband will probably be able to bring the value of his 401(k) account up relatively quickly, but there is very little possibility that Wife will be able to establish or fund a retirement account.

_Id_. at *7.

Similarly, Ms. Lofton's ability to seek employment outside the home is limited due to her education, experience, and health issues. In contrast, Mr. Lofton has enjoyed a successful career in the insurance field, has consistently increased his income, and has expressed no intent to retire. From the totality of the circumstances, we conclude that the trial court did not abuse its discretion in dividing the marital property.

### Alimony _in futuro_

The trial court ordered the following as alimony _in futuro_:

> 6. **Alimony _in Futuro_.** As alimony _in futuro_ pursuant to T.C.A. Section 36-5-101(d)(1)(E), Husband is hereby ordered to pay alimony _in futuro_ for the benefit of Wife:
>
> A. $2,970.00 per month payable directly to Wife; and

B.  The cost of Wife's health insurance coverage with benefits that are not less than the coverage Wife had in place on April 22, 2005, via COBRA, HIPPA and beyond; and

C.  All of Wife's reasonable and necessary health care expenses, including but not limited to medical, dental, optical, psychological counseling, prescription medications, and physical therapy, that are not covered by insurance, including any such expenses incurred and uninsured by virtue of a lapse in Wife's health care coverage.

Tenn. Code Ann. § 36-5-121(h)(3)(i) outlines the factors to be considered by the trial court in awarding alimony:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Of these factors, need and the ability to pay are the critical factors to be considered. ***Loyd v. Loyd***, 860 S.W.2d 409 (Tenn. Ct. App.1993). In Tennessee, our courts "recognize[ ] several separate classes of spousal support, including long-term spousal support (alimony *in futuro*), alimony *in solido*, rehabilitative spousal support, and transitional spousal support." ***Riggs v. Riggs***, 250 S.W.3d 453, 456 (Tenn. Ct. App.2007) (footnotes omitted). Tenn. Code Ann. § 36-5-121(d)(2) reflects a statutory preference favoring rehabilitative spousal support and transitional spousal support over long-term spousal support. ***Id.*** However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. ***Id***. (citing ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn.1995)).

The trial court awarded alimony *in futuro*, which is defined as:

> [A] payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1).

The factors outlined at Tenn. Code Ann. § 36-5-121(h)(3)(i), apply whether the court is making an award of alimony *in futuro* or alimony *in solido*. ***Houghland v. Houghland***, 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992) (citing ***Fisher v. Fisher***, 648 S.W.2d 244, 246-47 (Tenn.1983)). Ultimately, an award of alimony, and the type thereof, is within the sound discretion of the trial court. ***Rains v. Rains***, 58 Tenn. App. 214, 428 S.W.2d 650 (Tenn. Ct. App.1968).

The statutory factors weigh heavily in Ms. Lofton's favor. As discussed in detail above, Ms. Lofton suffers from a myriad of medical issues, she is unable to work outside the home, she has no means of future income, and has a need for health insurance to cover her considerable medical bills. Because Mr. Lofton admitted to having an affair during the course of the marriage, the demise of this union rests largely on his shoulders. More importantly, however, Mr. Lofton has the ability to pay alimony and Ms. Lofton definitely has a need for future support. That being said, we conclude that the trial court's order requiring Mr. Lofton to pay all of Ms. Lofton's uninsured medical costs (presumably until her death) to be to expansive. Although Mr. Lofton's earnings are considerable, a lack or lapse of health insurance for Ms. Lofton could be financially disastrous for him. At the

time of the hearing, Mr. Lofton was 60 years old and Ms. Lofton was 59. In light of this fact, and the possible financial impact to Mr. Lofton, we find that Mr. Lofton should pay all of Ms. Lofton's uninsured medical expenses until such time as she is eligible for Medicare. At that time, his obligation to pay the uninsured medical expenses shall cease. We affirm the award of alimony *in futuro* in all other respects.

### Attorney's Fees

An award of attorney's fees in a divorce case constitutes alimony *in solido*. **See Herrera v. Herrera**, 944 S.W.2d 379, 390 (Tenn. Ct. App.1996). Tenn. Code Ann. § 36-5-121(d)(5) (2005) provides: "Alimony *in solido* may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." The Court reviews alimony decisions under an abuse of discretion standard. **Garfinkel v. Garfinkel**, 945 S.W.2d 744, 748 (Tenn. Ct. App.1996). As with any award of alimony, a trial court should consider the relevant factors set out at Tenn. Code Ann. § 36-5-121(h)(3)(i), with the most important factors being the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. **Riggs v. Riggs**, 250 S.W.3d 453, 457 (Tenn. Ct. App.2007). The trial court awarded Ms. Lofton the full amount of her attorney's fees, totaling $55,106.25. Reviewing this award in light of the considerations set out above, we conclude that the award of attorney's fees and costs in this case was equitable and necessary.[3]

For the foregoing reasons, we modify the trial court's order to require Mr. Lofton to pay all of Ms. Lofton's uninsured medical expenses until such time as she is eligible for Medicare. At that time, his obligation to pay these uninsured medical costs shall cease. The order of the trial court is affirmed in all other respects. Costs of this appeal are assessed against the Appellant, Harry W. Lofton and his surety.

_____
J. STEVEN STAFFORD, J.

---

[3] We note that neither party has requested attorney's fees for this appeal. However, from the totality of the circumstances, we conclude that it would be equitable and reasonable for each party to bear his or her respective expenses arising from this appeal.