# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 23, 2015

## WILLIAM HUNTER BABCOCK v. SONNIA ELIZABETH BABCOCK

**Appeal from the Chancery Court for Hamilton County**
**No. 130724     Ward Jeffrey Hollingsworth, Judge**

_____

**No. E2014-01670-COA-R3-CV-FILED-MARCH 9, 2015**

_____

## WILLIAM HUNTER BABCOCK v. SONNIA ELIZABETH BABCOCK

**Appeal from the Circuit Court for Hamilton County**
**No. 13D1231     Ward Jeffrey Hollingsworth, Judge**

_____

**No. E2014-01672-COA-R3-CV**

_____

A married couple entered into a business partnership prior to their marriage. This is a consolidated appeal from the parties' divorce action and their partnership dissolution action. We affirm the trial court's decision to adjudicate the partnership dissolution action and the divorce action separately, based on Wife's failure to raise any argument on this issue in the trial court. With regard to the remaining issues, however, we vacate the judgment of the trial court and remand for findings of fact and conclusions of law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Chancery and Circuit Courts**
**Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B.

GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Carol M. Ballard and Bill W. Pemerton, Chattanooga, Tennessee, for the appellant, Sonnia Elizabeth Babcock.

Sandra J. Bott, Chattanooga, Tennessee and Justin G. Woodward, Ringgold, Georgia, for the appellee, William Hunter Babcock.

## OPINION

### Background

On January 26, 2009, William Hunter Babcock ("Husband") and Sonnia Elizabeth Babcock ("Wife") entered into a Partnership Agreement creating the Lambert-Babcock Partnership ("Partnership"). The parties were not married at the time that they entered into this agreement. The Partnership Agreement provides, "All properties purchased by either partner after the date of this Agreement, however titled, shall become partnership property unless specifically excluded by a written statement signed by all partners." The Partnership Agreement reflected Husband's initial real property contribution to the Partnership of $60,000.00 made as a down payment on an apartment building in Baltimore, Maryland ("Maryland property"). Husband stated that his total contribution for the Maryland property was approximately $200,000.00 because the property required significant refurbishing. The Partnership also operated an ice cream business in Florida.[1] It is unclear how the parties acquired the ice cream business in Florida; however, Husband testified that he purchased the equipment for the business and paid the rent. Although Wife did not make any capital contributions to the Partnership, she managed the partnership properties, including the Maryland property, and performed other services for the Partnership, such as dealing with the property's tenants.

Although Husband later testified that marriage was not contemplated at the time the parties entered into the Partnership, Husband and Wife eventually married on August 5, 2011. This marriage was Wife's "fourth or fifth" and Husband's fifth. No children were born of the marriage. Husband alleged that he married Wife at her request, but that the marriage

---

[1]The classification and division of the ice cream store does not appear to be in dispute. In its oral ruling on the partnership dissolution action, the trial court stated that the ice cream store was part of the Partnership Agreement, "but it's my understanding there is nothing there so we don't need to worry about it." Further, the ice cream store is not mentioned in the trial court's final written order, nor is it mentioned in either party's brief to this Court. Neither party raises the trial court's disposition of this property as an issue on appeal.

was troubled from the start.

The parties moved to Tennessee in June 2012, when Husband accepted a job with the Watts Bar Nuclear Power Plant. The parties purchased a home in Red Bank, Tennessee ("Red Bank home"), where Wife primarily resided after moving to Tennessee. The Red Bank home was titled in both parties' names rather than in the name of the Partnership. Husband, however, did not primarily reside in the Red Bank home, but maintained his own separate apartment close to his employer.

Soon after the parties' move to Tennessee, however, both their professional and personal relationships soured. As such, this appeal stems from two separate actions filed to dissolve the parties' relationships: a partnership dissolution action in Hamilton County Chancery Court and a divorce action filed in Hamilton County Circuit Court. Specifically, on June 7, 2013, Husband filed his Complaint for Divorce against Wife in the Circuit Court of Hamilton County. As grounds for divorce, Husband cited irreconcilable differences or, in the alternative, inappropriate marital conduct. On July 3, 2013, Wife filed a motion for alimony *pendente lite*. Shortly thereafter, on July 11, 2013, she filed her answer and her counter-complaint, citing as grounds inappropriate marital conduct, adultery, indignities rendering her position intolerable, abandonment, and, in the alternative, irreconcilable differences. The trial court thereafter entered an order requiring Husband to pay Wife alimony *pendente lite* of $500.00 per month.

Several months later, on October 2, 2013, Husband filed his Verified Complaint against Wife in the Chancery Court of Hamilton County, requesting a dissolution of the partnership and an order directing an accounting of the assets. Husband specifically asserted that Wife had converted Partnership assets and breached her fiduciary duties. On the same day, Husband filed a motion for an immediate temporary restraining order to prevent Wife from acting on behalf of the Partnership and prevent her from destroying any records related to the Partnership. As previously discussed, the partnership dissolution action and the divorce action were filed in two separate courts under two separate docket numbers. On October 3, 2013, however, Judge Hollingsworth of the Hamilton County Circuit Court , the judge presiding over the parties' divorce case, entered an order stating that he would preside over the parties' dissolution case by interchange. Nothing in the record indicates that either party objected to Judge Hollingsworth presiding over both cases, nor does the record contain any request by either party to consolidate the two actions. Indeed, Wife filed no responsive pleadings in the partnership dissolution action.[2]

---

[2] The only action by Wife in the partnership dissolution action was a motion by Wife's counsel
(Continued...)

The trial court heard proof in both the partnership dissolution and divorce actions on the same day, June 10, 2014. The facts of this case are gleaned from the transcripts of both cases. The trial court heard the partnership dissolution action first. At the conclusion of the partnership dissolution trial, the trial court ruled that the Partnership was dissolved and that both the Maryland property and Red Bank home were partnership property subject to distribution in the dissolution action. The trial court ordered the parties to immediately place the Red Bank home on the real estate market and divide the net proceeds received from its sale pursuant to the Partnership Agreement, but allowed Wife to occupy the residence an additional ninety (90) days. The trial court's written ruling did not mention Husband's reptile breeding businesses, which are discussed in more detail, *infra*; however, the trial court's oral ruling reveals that this omission is due to the trial court's finding that the reptile breeding businesses did not constitute partnership property. Finally, the trial court ordered that all the property and assets of the Partnership be liquidated, and that upon sale, the parties present a full accounting to the court. Each party would also be responsible for his or her portion of any non-recoverable expenses after liquidation pursuant to the Partnership Agreement. With the exception of the finding concerning the classification of Husband's reptile breeding businesses, the foregoing findings were memorialized in a written order entered August 6, 2014. Neither party raises any issue concerning the trial court's underlying rulings in the dissolution action.[3]

The trial court next considered the parties' cross-complaints for divorce. The parties' central disagreements concerned Wife's entitlement to alimony and the classification and distribution of the parties' property. Wife testified that, prior to the parties' marriage, she worked for Lucent Technologies and AT&T for twenty years. When she met Husband, her income was approximately $80,000.00 to $85,000.00 annually. She retired from the company and became an independent contractor when she met Husband. At trial, the parties disputed Wife's reason for quitting her employment; while Husband reiterated that it was Wife who voluntarily left her employment to avoid her child support obligations, Wife testified that she did so at Husband's request. In any event, Wife testified that she could not immediately return to her previous job, and that she would need approximately two years to complete

(...continued)
to withdraw, which motion was granted. Although the record does not contain a notice of appearance on behalf of a new attorney, Wife was represented by counsel at both the partnership dissolution and divorce trials.

[3] As discussed in detail, *infra*, Wife does argue that the trial court erred in not considering the totality of the parties' property in the divorce case. Other than the trial court's decision to bifurcate the issues, however, Wife does not point to any specific errors made by the trial court in the dissolution proceeding.

certifications for her prior job or to finish her biochemistry degree and obtain a job in that field. As an entry-level worker with a biochemistry degree, Wife testified she could earn approximately $60,000.00 annually.

In contrast, at the time of trial, Husband was employed as a contractor for the Watts Bar Nuclear Power Plant, earning approximately $240,000.00 annually. His salary was deposited into a bank account solely in his name throughout the marriage. Outside of his employment at the power plant and the Partnership, Husband maintained several other business ventures, including two reptile breeding businesses, Ophidian and Adnoartina. According to Husband, both of these businesses began after the commencement of the Partnership but prior to the parties' marriage. Husband contributed significant amounts of money to these two businesses. Between 2012 and 2014, Husband contributed over $200,000.00 to Ophidian. Between 2012 and 2014, he contributed over $8,000.00 to Adnoartina. Husband testified that he had not received any returns on the funds he contributed to either business. Husband stated that he contributed the money, however, because he was contractually obligated by other partnership agreements to which Wife was not a party. Wife claims that she was unaware of Husband's contributions during most of their marriage. Neither party disputes that Husband's involvement with these businesses began prior to the parties' marriage or that Husband substantially contributed to the businesses during the marriage.

In addition to his business expenditures for Ophidian and Adnoartina, Husband also made a payment in 2012 for $4,069.00 on a $25,000.00 loan he allegedly received from his girlfriend. Husband also testified that, throughout the parties' marriage, he continued to date his girlfriend, who loaned him the $25,000.00. Additionally, Husband purchased a $36,000.00 truck when the parties were separated. Husband listed the same truck as a $7,000.00 liability on his asset and liability sheet at the time of the divorce.

Wife also inherited a condominium in Florida ("Florida condominium") from her father after the parties were married. The Florida condominium was eventually titled in both parties' names and Husband contributed significant funds to its repair. In addition to the parties' property previously discussed, the record indicates that the parties had other property, including: two vehicles; a rental property in Chattanooga; at least two more business entities titled William Hunter Enterprises and William Hunter Properties; Husband's Simplified Employee Pension Plan/Individual Retirement Account; Wife's pension; and miscellaneous tools, furniture, and personal belongings.

Both parties also testified as to how the parties allocated and paid their living expenses during the marriage. Wife was able to use the income from the Maryland property for her personal expenses. Husband testified that he never used any of the funds from this account.

Husband testified that Wife also received a pension from her employment with Lucent Technology, but that he was unaware of the amount of the pension or whether she was currently receiving income from it. In her testimony, Wife does not dispute receiving the pension from Lucent Technology, but she offers no details as to the amount. Wife also receives approximately $400.00 per month in rent from the inherited Florida condominium, although she testified that the entirety of the payments are used to cover the condominium's expenses.

The trial court entered the Final Decree of Divorce on August 15, 2014. In its written order, the trial court granted Wife a divorce based upon Husband's inappropriate marital conduct. With regard to the parties' property, the trial court ruled that the Florida condominium had transmuted into marital property based on Wife's actions of jointly titling it in both parties' names. Wife does not take issue with this finding on appeal. The court ordered the parties to immediately place the Florida condominium on the real estate market and equally divide the net proceeds. Husband was awarded additional property, including his furniture, tools, and clothing from the Red Bank home, which personal property had not been previously adjudicated in the partnership dissolution action. The trial court also awarded Wife a 2006 Honda Ridgeline vehicle and ordered Husband to pay the indebtedness on that vehicle as alimony *in solido*.[4]

With regard to Wife's request for either rehabilitative or transitional alimony, the trial court, considering the factors in Tennessee Code Annotated Section 36-5-121, found that this was a "marriage of short duration, the [Wife] has been provided with temporary support for one year during the pendency of the separation, and has the education, earning capacity and separate assets to provide for her own support[.]" As such, Wife's request for rehabilitative or transitional alimony was denied by the trial court. Husband was ultimately ordered to pay Wife's attorney's fees of $5,000.00 and court costs as alimony *in solido* because the trial court found him at fault in the divorce. Neither of the trial court's written orders in either the partnership dissolution action or the divorce action incorporated the trial court's oral rulings by reference.

Wife filed a timely appeal of the trial court's final judgments in both the partnership dissolution action and the divorce action on August 28, 2014. Initially, the two cases were assigned two different docket numbers on appeal. On November 13, 2014, at Wife's request, this Court consolidated docket number E2014-01670-COA-R3-CV, the partnership dissolution action, and docket number E2014-01672-COA-R3-CV, the divorce action, into

---

[4]Although the trial court made specific findings as to which party the Honda Ridgeline and personal property in the Red Bank home would be awarded, the trial court made no specific finding that such property was marital or separate property, as discussed in detail, *infra*.

one appeal under the docket number E2014-01670-COA-R3-CV.

**Issues**

Wife presents three issues for review:

> 1. Whether the trial court erred in failing to award rehabilitative or transitional alimony;
> 2. Whether the trial court erred in the division of marital property regarding the transmutation of Wife's separate property and Husband's alleged dissipation of marital assets;
> 3. Whether the trial court erred in failing to treat the parties' real estate partnership as marital property.

Additionally, Husband presents one issue:

> 1. Whether Husband is entitled to his reasonable attorney's fees for defending this appeal.

We address each issue in turn.

**Discussion**

*Classification of Marital Property and Partnership Property*

Before we address Wife's issues regarding the division of marital property and alimony, we begin with her argument that the trial court erred when it applied partnership law in dissolving the partnership, rather than domestic relations law. Husband asserts that Wife has waived this issue on appeal due to her failure to request consolidation of the cases at trial.

We agree that Wife has waived this issue. The only indication that Wife did not consent to the two separate proceedings is a statement by Wife's counsel on the day of trial that the Red Bank home was marital property and not Partnership property. "[T]here is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001). Although Wife certainly had ample opportunity to contest the procedure utilized by the trial court over the seven months that the partnership dissolution action was pending, Wife registered no objection in the trial court. Wife's acquiescence on this issue at the trial level constitutes a waiver of the issue on appeal.

*Division of Marital Property*

As we perceive it, Wife next argues that the trial court erred when it did not award her a larger share of the marital property. With regard to this issue, the trial court's written order provides that the Florida condominium was transmuted to marital property and ordered it to be sold and the net proceeds divided equally. In addition, the trial court awarded Wife the 2006 Honda Ridgeline and ordered Husband to pay the indebtedness on the vehicle and a portion of Wife's attorney's fees, as alimony *in solido*.

Tennessee law provides that the division of marital property, including its classification and valuation, are findings of fact. ***Woodward v. Woodward***, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Accordingly, the trial court's decisions regarding classification, valuation, and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. ***Farrar v. Farrar***, 553 S.W.2d 741, 743 (Tenn. 1977). Trial courts have "wide latitude in fashioning an equitable division of marital property." ***Altman v. Altman***, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005); however, Tennessee Code Annotated Section 36-4-121(c) directs the trial court to consider a list of factors when making an equitable division of marital property. *See* Tenn. Code Ann. § 36-4-121(c) (listing several factors the trial court "shall consider" before equitably dividing the parties' marital property). The division of marital property is rooted in equity, and a division of marital property is not rendered inequitable merely because it is not precisely equal, ***Lofton v. Lofton***, 345 S.W.3d 913, 923 (Tenn. Ct. App. 2008) (citing ***Cohen v. Cohen***, 937 S.W.2d 823, 832 (Tenn. 1996)), or because each party does not receive a share or portion of each marital asset. ***Lofton***, 345 S.W.3d at 923 (citing ***Cohen***, 937 S.W.2d at 833).

When making its division of property, the trial court **must** first classify the property. Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tennessee Code Annotated Section 36-4-121(a) "provides only for the division of marital property." *See also* ***Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). In addition, Tennessee Code Annotated Section 36-5-121(b)(1)(B) provides that any increase in value to separate property may be considered marital property if each party contributed to its preservation and appreciation.

In the instant case, the trial court failed to classify any of the parties' property with the exception of the Florida condominium, which was found to be transmuted by virtue of Husband's contributions to its repairs into marital property. As previously discussed, in addition to the Florida condominium, the record shows that the parties have other assets, including two vehicles, two reptile businesses, Husband's retirement account, Wife's

pension, the two William Hunter businesses, and the rental property in Chattanooga.[5] Nothing in the trial court's written order indicates that the trial court classified any of this property as either marital or separate. Further, while one vehicle was specifically awarded to Wife, the trial court makes no provision or findings of any kind with regard to the other property. Thus, the trial court did not fulfill its duty to first classify the parties' property as either marital or separate.

Furthermore, after a trial court classifies property as marital or separate, Tennessee law is clear that "[t]rial courts must place a reasonable value on marital property that is subject to division." *Kraus v. Thomas*, No. M2012-00877-COA-R3-CV, 2013 WL 2612458, at \*10 (Tenn. Ct. App. June 7, 2013); *Jacobsen v. Jacobsen*, No. M2012-01845-COA-R3-CV, 2013 WL 1400618, at \*9 (Tenn. Ct. App. Apr. 5, 2013) (citing *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at \*11 (Tenn. Ct. App. May 13, 2003)). In addition to the values assigned to marital property, the value of separate property is important, as it is to be considered by the trial court making an equitable division of the marital estate. Tenn. Code Ann. § 36-4-121(c). The parties bear the burden "to provide competent valuation evidence." *Kraus*, 2013 WL 2612458, at \*10 (citing *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998)). "If the parties' valuation evidence is conflicting, the trial court 'may place a value on the property that is within the range of the values presented.'" *Barnes v. Barnes*, No. M2012-02085-COA-R3-CV, 2014 WL 1413931, at \*5 (Tenn. Ct. App. Apr. 10, 2014) (citing *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997)).

In the instant case, although both parties included the proper chart pursuant to Rule 7 of the Rules of the Court of Appeals of Tennessee, the included charts, along with the record on appeal, reveal that the trial court did not assign a value to any of the parties' property, marital or separate. Although the parties purport to agree on the values of several pieces of property, the trial court did not accept or reject these values, so it is unclear to this Court whether the trial court deemed these values to be supported by competent evidence. In addition, the parties offer significantly different values for at least one of Husband's reptile businesses, Ophidian. Wife valued Ophidian at $150,000.00, while Husband valued the same business at $50,000.00. Although less stark, the difference in values for Husband's other reptile business, Adnoartina, equals $7,500.00. Here, the trial court did not place a value on any of the parties' marital or separate assets.

In non-jury cases such as this, Rule 52.01 of the Tennessee Rules of Civil Procedure provides that trial courts "**shall** find the facts specially and state separately its conclusions

---

[5] As previously discussed, some property, including the Maryland property and Red Bank home, were distributed in the partnership dissolution action. Therefore, they were not at issue in the divorce action.

of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01 (emphasis added). Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.*

This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.* No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)). Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law," unless the trial court's decision involves only a clear legal issue or the trial court's decision is readily ascertainable. *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011); *Burgess v. Kone, Inc.*, No. M2007-02529-COA-R3-CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008). In this case, the issues concerning the portion of the marital estate awarded to Wife do not involve a clear legal issue, nor is the basis for the trial court's division of the marital estate "readily ascertainable." *Id.* In the absence of appropriate findings and conclusions under Rule 52.01 regarding the classification and valuation of all property at issue, we cannot determine whether Wife was awarded an equitable portion of the marital estate. Accordingly, we must vacate and remand to the trial court to make the appropriate findings of fact and conclusions of law.

*Dissipation*

We next turn to Wife's argument that the trial court erred in declining to find that Husband had dissipated marital assets through his funding of two separate business ventures, Ophidian and Adnoartina, totaling $208,610.00; through his repayment of a loan in the amount of $5,269.00 to his girlfriend; and through the purchase of a $36,000.00 truck, which Husband listed as a $7,000.00 liability on his asset and liability worksheet. The trial court's written order makes no finding with regard to Wife's dissipation argument. It is well-settled that a court speaks through its written orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. 1977). As previously discussed, Rule 52.01 mandates that trial court's make findings of fact

and conclusions of law to support their decisions incident to bench trials. *See* Tenn. R. Civ. P. 52.01. This Court has indicated, however, that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, "when the case involves a clear legal issue, or when the court's decision is readily ascertainable." *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013) (citations omitted).

In this case, the trial court did make an oral ruling at the conclusion of the divorce trial related to dissipation, stating:

> [T]here wasn't dissipation of assets to where the parties were put in real financial strain. We can sit here and debate whether or not this is going to end up being a good investment or a bad investment, but the fact is he was making enough money he could pay that and still support them. They chose to live apart. That's more expensive. That's just the way it goes.

The trial court did not make either a written or oral ruling on whether Husband's repayment of the loan to his girlfriend or whether his purchase of the truck constituted a dissipation of assets; indeed,  because the trial court frames his consideration in terms of an "investment" it appears that the trial court only considered dissipation as it related to Husband's investment in the reptile businesses. Accordingly, the trial court's order is deficient with regard to Wife's assertion that Husband dissipated assets by repaying a loan to his girlfriend and purchasing a new vehicle.

In addition, from our perception of the trial court's oral ruling, the trial court's determination that Husband had not dissipated any assets with regard to the reptile breeding businesses was premised on the trial court's reasoning that Husband's expenditures had not put the parties in "real financial strain." Tennessee Code Annotated defines "dissipation" as: "wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed." Tenn. Code Ann. § 36-4-121(c)(5)(B). More specifically, dissipation is "made for a purpose unrelated to the marriage, and is often intended to 'hide, deplete, or divert' marital property." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010). Dissipation is not a separate factor in the determination of dividing the parties' marital property. *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005). Rather, the dissipation—that is, the "allegedly improper or wasteful expenditure or transaction"—must be considered in the context of the marriage as a whole. *Id.*

The trial court's determination of dissipation in this case does not appear to be

analyzed under the appropriate standard. When determining whether a particular expenditure or transaction amounts to dissipation, Tennessee courts frequently apply the following four factors: "(1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or contemplating divorce;[6] (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset." *Id.* at 682 (citing *Halkiades v. Halkiades*, No. W2004-00226-COA-R3-CV, 2004 WL 3021092, at *4 (Tenn. Ct. App. Dec. 29, 2004)). The trial court's oral ruling, and certainly the written order, provides no indication that the trial court considered the foregoing factors in determining whether Husband dissipated marital assets. Instead, the trial court's reasoning rests on whether the parties were placed in "financial strain," which is not an element courts consider when making a determination of dissipation. *See Altman*, 181 S.W.3d at 682.

Based on the foregoing, we are unable to "soldier" in the face of these deficiencies. The issue of whether Husband dissipated marital assets is remanded to the trial court for specific findings of fact and conclusions of law in accordance with the foregoing principles.

*Alimony*

Wife also raises the issue of whether the trial court erred when it declined to award her rehabilitative or transitional alimony. Because we are remanding to the trial court to make appropriate findings of fact and reconsider its decisions concerning the equitable division of the parties' marital property, we decline to address the remaining issue raised by Wife concerning whether the trial court erred when it did not award her rehabilitative or transitional alimony. *See Franks v. Franks*, No. W2014-00429-COA-R3-CV, 2015 WL 58913, at *18 (Tenn. Ct. App. Jan. 2, 2015) (declining to address the issue of alimony in light of insufficient findings concerning the valuation of the parties' property). Because the trial court's determinations regarding the division of marital property are subject to change on remand, any change that the trial court makes on this issue could have a significant effect on the issue of alimony. *See* Tenn. Code Ann. § 36-5-121(i) (providing that the trial court shall consider each parties' separate property and the division of marital property when determining whether an award of spousal support is warranted). As such, this issue is pretermitted.

*Attorney's Fees on Appeal*

---

[6]Transactions that were commonplace during the parties' marriage are typically not deemed to be dissipation, especially when the other spouse acquiesced to them. *Altman*, 181 S.W.3d at 682, n.5.

Finally, Husband requests that this Court award him his reasonable attorney's fees incurred in defending this appeal. An award of appellate attorney's fees is a matter within this Court's sound discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005). Considering all of the relevant factors in this case, we respectfully decline to award Husband's attorney's fees in this appeal.

## Conclusion

The judgments of the Circuit and Chancery Courts of Hamilton County are hereby affirmed in part, vacated in part, and remanded. Costs of this appeal are taxed one-half to Appellant Sonnia Elizabeth Babcock, and her surety, and one-half to Appellee William Hunter Babcock, for all of which execution may issue if necessary. This cause is remanded to the trial court for the collection of costs and all further proceedings as may be necessary and are consistent with this Opinion.

_____
J. STEVEN STAFFORD, JUDGE