IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2013 Session

# IN RE M.J.H.

# CASEE WAGSTER HART v. RANDY LEWIS

**An Appeal from the Juvenile Court for Gibson County**
**No. 01579      Robert W. Newell, Judge**

_____

**No. W2012-01281-COA-R3-JV - Filed June 25, 2013**

_____

In this appeal, the mother of the child at issue appeals the trial court's order establishing paternity. The appellant mother filed this parentage petition against the father. At the outset of the hearing on the petition, the mother's attorney announced that he had developed a conflict of interest regarding his representation of the mother, because he had previously consulted with both the mother and the father when the parties agreed on the issues. By the time of the hearing, the parties no longer agreed and the father had hired his own attorney. Despite the attorney's disclosure that he had developed a conflict of interest in continuing to represent the mother, the trial court proceeded with the paternity hearing. What ensued was a procedural train wreck; it ultimately resulted in orders that resolved all issues on their merits. The mother appeals. We conclude that this particular train never should have left the station. In light of the disclosure by the mother's prior attorney that he had developed a conflict of interest, we vacate everything that followed the attorney's disclosure, except the order allowing the mother's attorney to withdraw.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is**
**Reversed, Orders Vacated, and Case is Remanded**
**for Reassignment and Further Proceedings**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Christine Coronado and James S. Wilder, III, Dyersburg, Tennessee, for the Petitioner/Appellant, Casee Wagster Hart

Robert Kinton, Trenton, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the Respondent/Appellee, Randy Lewis

# OPINION

In May 2009, Petitioner/Appellant Casee Hart ("Mother") gave birth to a daughter, M. J. Hart ("Daughter" or "the child"). When the child was born, Mother was married to Harry Hoover Hart, Jr. ("Mr. Hart"), so Mr. Hart was presumed to be the father of the child. The surname on the child's birth certificate was "Hart."

Unbeknownst to Mr. Hart at the time, Mother was having an extramarital affair with Respondent/Appellee Randy Lewis ("Father"). During this time, the subject child was conceived. When she became pregnant, Mother allegedly believed that Mr. Hart was the biological father of Daughter, because Father had told her that he had undergone a vasectomy. So for the first two years of Daughter's life, she was raised by Mother and Mr. Hart.

Around March 2011, Mother and Mr. Hart separated and initiated divorce proceedings. In July 2011, Father confessed to Mother that it was possible that he could be Daughter's biological father. Subsequent DNA testing established that Father, not Mr. Hart, is in fact the child's biological father.[1] Around that time, Mother and Daughter moved into Father's home.

On July 25, 2011, while Mother and Daughter were still living with Father, Mother filed this parentage petition in the Juvenile Court for Gibson County, naming Father as the respondent. At the time, Mother was represented by attorney Jeffrey A. Smith ("Attorney Smith"). According to Attorney Smith, he consulted with Mother and Father together about the petition, and they agreed on all issues to be decided. In Mother's petition, she asked the trial court to order DNA testing, establish Father as the biological father of Daughter, designate Mother as the child's primary residential parent, grant Father "limited supervised visitation," and set Father's child support obligation. The petition did not mention changing the child's surname. Father did not file a responsive pleading to the petition.

The trial court scheduled a hearing on Mother's parentage petition for December 6, 2011. At some point after Mother filed her parentage petition but before the hearing, the parties' relationship foundered and they separated. Father hired his own counsel, Attorney Robert Kinton ("Attorney Kinton").

---

[1] The results of the DNA testing were not submitted to the trial court, and they are not in the appellate record. Nevertheless, it is undisputed that the test results established Father as Daughter's biological parent.

On December 6, 2011, the trial court conducted its hearing on Mother's parentage petition. Attorney Smith appeared at the hearing with Mother. Father was represented by Attorney Kinton.

At the outset of the hearing, Attorney Smith explained to the trial court that he had developed a conflict of interest in continuing to represent Mother. This disclosure did not deter the trial court from proceeding with the hearing:

> [Attorney Smith]: Your Honor, if I could stop us before we go too far and waste too much time, I filed this petition on behalf of the mother. However, at the time they were residing together and they came in together, just agreed on the thing at the time. Since[] then[,] they have gone their separate ways. There are issues that are not agreed on. *It's going to be an obvious conflict for me to stay in*.

> [Trial Court]: Who is the child with right now?

> [Attorney Smith]: With the mother.

> [Trial Court]: *Now I can go ahead and establish paternity and everything* and I can reset for your — for the issues that you've got filed and then I can take care of the issues. . . .
> . . .

> Okay. And then the name of the child; you know, the parenting plan or visitation plan. It's up to what y'all want to deal with today and what you don't want me to deal with today or what we [are] going to contest.

> [Attorney Kinton]: Let me tell you the issues that are here in [Mother's] motion. . . . I just got into this.
> At some point in time they had agreed that a test was taken, he was found to be the father, she moved in with him. She left her first husband . . . . Now, the child support issue, that's a variance and that it wasn't figured in and it needs to be figured in.
> Second of all, the time that this was supposedly agreed upon they had been living together and he just got standard visitation every other weekend and a night during the alternate week. And she wants the child's name to be Hart-Lewis. [Father] is objecting to that. It's his child and he wants his child to carry his name. I think he has that right. Now, that's where we are.

If [Attorney Smith] needs to back out, I stand in no way objection to that, and let her obtain[] other counsel. But those are the issues and they should be able to be worked out, but if she is going to be [intransigent] on all of them it ain't going to be worked out.

(Emphasis added). Thus, Attorney Smith informed the trial court that he had previously met with Mother and Father together, but the parties' interests were no longer aligned, and he was now required to take an adversarial position against Father. Attorney Smith told the trial court that his former consultation with both Mother and Father posed "an obvious conflict for [him] to stay in [the case]." Attorney Kinton recognized that Father and Mother were no longer in agreement and said he would not object to a continuance to permit Mother to obtain new counsel.

As the above-quoted colloquy reveals, the trial court responded by ignoring the conflict of interest disclosed by Attorney Smith and proceeding with the hearing as though the conflict of interest had never been raised. After the trial judge stated that he intended to "go ahead and establish paternity and everything," Attorney Smith continued to participate in the hearing, and Mother did not voice an objection.

As the hearing proceeded, Attorney Smith indicated another potential conflict of interest. Attorney Smith told the trial court that he represented both Mother and Mr. Hart in their ongoing divorce proceedings, and noted that this demonstrated "more conflict" of interest. He commented that the divorce was essentially complete except that Mr. Hart was waiting to sign the final decree because he did not want the child to be without a legal father for any period of time. The trial court apparently interpreted this as a reason to forge ahead to resolve all of the issues in the case:

> [Trial Court]: I can establish paternity today, number one.
> 2) I can establish the primary care giver if there is no argument [on] that.
> . . .
> 3) I can establish the name of the child *unless it's — you [Mother] can show some potential harm, the name of the child will be Lewis.*
> And I can set child support according to statute guidelines. We'll probably have some questions about the retro because of the time that they were together or apart and have to see what credit he gets there.

(Emphasis added). As the emphasized quote indicates, the trial court told the parties that it intended to change Daughter's last name to "Lewis" unless Mother could show substantial

harm from such a change, essentially placing the burden on Mother to show that the child's name *should not* be changed.[2]

What followed was a hearing of sorts, but not an evidentiary hearing. The trial court took no sworn testimony, no exhibits, no evidence. Instead, as described below, the trial court outlined what it normally did in this type of case and gathered the facts and positions in this case via questions directed to the attorneys and to the parties sitting in the courtroom. The attorneys and the trial judge engaged in a generally free-wheeling three-way discussion of the facts and the issues, punctuated by periodic rulings by the trial judge on the issues as they were discussed.

In the hearing, the trial court referred to the accrual date for Father's retroactive child support by saying, "Looks like that's the only argument that y'all got. Everything else [is] going to fall right down through the statute," presumably alluding to Tennessee Code Annotated § 36-2-311. Attorney Smith indicated that Attorney Kinton had given him the information on Father's income that very morning, and he had not yet discussed with Mother the amount of child support that she sought or the accrual date for retroactive child support:

> [Trial Court]: What if I were to retro back to a time that they separated this last time?
>
> [Attorney Kinton]: That would be fine. That would be —
>
> [Attorney Smith]: That's going to be an issue on the amount. I haven't really had time to talk to her about it. Mr. Kinton handed me figures on it this morning.
>
> [Trial Court]: I can hold that in abeyance if y'all want to fight over it a few weeks.
>
> [Attorney Smith]: You want to do temporary every other weekend until we get back in here or agree to something?
>
> [Attorney Kinton]: I have no problem with that. And if the Court please, if you want to go ahead and establish paternity —

---

[2]*See Sullivan v. Brooks*, No. M2009-02510-COA-R3-JV, 2011 WL 2015516, at*1 (Tenn. Ct. App. May 23, 2011) (stating that the party seeking to change child's surname must prove that change is in the child's best interest).

[Trial Court]: . . . *I am going to go through everything and establish everything. There is no sense in us coming back if we can get it done right now.*

[Attorney Smith]: We can go ahead and enter a temporary order establishing him as the parent to get —

[Trial Court]: I am going to order that he is the biological father of the child and do all that. And y'all got a DNA test and then you'll take this order and that, whatever the Chancellor wants down in Dyer County.

. . .

[Attorney Smith]: But in the meantime what I was, you know, whispering to Mr. Kinton about, if we could just put down a temporary order for every other weekend?

[Trial Court]: *I can just state my shared parenting plan and we can go through it. That's what I'll do.* That way, you know, we'll leave here all minds together. Later on if either one of them have an objection on the visitation they can file a pro se and I'll look at it again or they can hire attorneys and y'all can fight over it.

(Emphasis added). Thus, Attorney Smith three times suggested to the trial court that it enter a *temporary* order on support and visitation in order to give the parties time to discuss those issues further. The trial court nevertheless insisted that it would "go through everything and establish everything," because there was "no sense in us coming back if we can get it done right now."

The trial court then pressed on to design a parenting plan for the parties, designating Mother as the primary residential parent and granting Father specific parenting time. There was no evidence, testimony, exhibits, or other documentation to support the parenting plan. Perhaps recognizing that this might present a problem, the trial court informed the parties that they could "fight over it" later if they disagreed with the parenting plan in the oral ruling.

Although there was no request for a name change, the trial court *sua sponte* issued an oral ruling declaring that the surname of the child "is changed to Lewis." No reason was given for that decision.

The trial court exhorted the attorneys to agree on a figure for Father's monthly child support obligation, adding that the parties could "always come back and fight any other time." Attorneys Smith and Kinton then had a discussion off the record. The record contains no documentation or other evidence as to Father's income, and the transcript indicates that none was submitted. After the attorneys' off-the-record discussion, and based on what they represented to the trial court as Father's income, the trial court ruled orally that Father owed Mother $383 per month in child support, describing it as an "agreed" amount. Turning to Mother, the trial court asked her directly whether she "want[ed] to waive or consider arrears." Mother responded: "Consider." The trial court then declared that Father's child support arrearage began to accrue on the date that Mother moved out of Father's home, which she stated was about three weeks before the hearing. Although Attorney Smith did not object to the oral ruling on the accrual date for Father's child support arrearage on behalf of Mother, Mother herself spoke up: "I was thinking we could go back from birth . . . ." The trial court summarily rejected Mother's suggestion and awarded her $257.25 for three weeks of child support arrearage.

At the conclusion of the hearing, the trial court gave the parties a copy of its parenting plan and child support worksheet. The trial court told the parties: "Now this is for you to go over and if there is something that you either disagree with or you can't do you need to let the Court know it today. Because what I'm going to do, I'm going to order that this be made a part of the order and we'll go right through here." The trial court then added that it was "going to sign this today, . . . [and] I'll incorporate this into your order."

At that point, Attorney Smith apparently made another stab at getting the trial court to recognize on the record his conflict of interest: "Your Honor, I've got a [conflict] I've already disclosed to the Court as far as my situation." This attempt was for naught. The trial court responded by simply saying, "Basically everything we've done today follows right down through the statute. There hasn't been anything outside the statute." Wishing the parties "[g]ood luck," the trial judge then offered, "Now, if you have any problems at all make sure you come back to court to get them changed."

On December 14, 2011, the trial court entered a written order consistent with its oral ruling. The trial court stated in the order that Father is the child's biological father, that the child's surname was changed to "Lewis," that Father must provide medical insurance for the child but the parties were to share evenly all non-covered expenses, that Father must pay monthly child support of $343, and that Father owed Mother $257 in child support arrears. The order showed Attorney Smith representing Mother. Mother was not mailed a copy of the order.

On January 26, 2012, Father filed a motion for contempt, alleging that Mother was in violation of the trial court's December 14, 2011 order by refusing to change the child's name

to "Lewis." On that same day, Attorney Smith filed a written motion to withdraw as counsel for Mother. On February 13, 2012, the trial court granted Attorney Smith's motion to withdraw. Later, the petition for contempt was dismissed as moot, because Mother changed the child's surname on her birth certificate to "Lewis."

On March 7, 2012, Mother's new counsel, Attorney Christine A. Coronado ("Attorney Coronado") entered an appearance on behalf of Mother. That same day, Attorney Coronado filed a petition on Mother's behalf to vacate the trial court's December 14, 2011 order pursuant to Rule 34 of the Tennessee Rules of Juvenile Procedure.

In her petition to vacate, Mother alleged that the December 14, 2011 order was not final, because Mother did not sign it, and it was not mailed to her address. She claimed that Attorney Smith's signature on the order was not sufficient, because he did not represent her at the hearing. Alternatively, she argued that certain portions of the order must be set aside because (1) Father did not submit proof that changing the child's name from Hart to Lewis was in the best interest of the child; (2) the child support arrearage was invalid; (3) the trial court failed to issue the required written findings as to why it deviated from the guidelines with respect to the child support arrearage; and (4) Father's child support obligation was based upon erroneous information and should be reconsidered. Therefore, Mother asked the trial court to vacate the December 14, 2011 order insofar as it changed Daughter's name to "Lewis," set the proper amount of child support, and set the proper child support arrearage; she also requested an award of attorney fees and costs, and that she be awarded "all such other further and general relief to which she may be entitled."

On April 25, 2012, the trial court held a hearing on Mother's petition to vacate. In the transcript of the hearing, the trial judge indicated at the outset that he was not receptive to Mother's petition. After some initial confusion, the trial court recapped the December 6 hearing by recalling that Attorney Smith did in fact represent Mother's interests at the hearing and that Mother voiced no objection to his participation. The trial court noted that Attorney Smith did not withdraw from the case until February 2012. Attorney Kinton agreed with the trial court's version of events. He said that the parties had "agreed on . . . everything but the change of the name," and that Attorney Smith "had not been [allowed to withdraw] at that point in time." The trial court also recalled informing Mother that she could always file a motion for the trial court to "reconsider those issues."

In the initial part of the hearing, before Attorney Coronado started the presentation of her proof and before any witnesses were sworn, the trial court began asking questions directly of Mother on the name-change issue:

[Trial Court]: But the problem I have with the name change, . . . [y]ou're not even a Hart anymore.

[Mother]: Yes, sir, I am a Hart. I haven't changed my name.

[Trial Court]: I mean but you're divorced from Mr. Hart, right?

[Mother]: Yes, sir.

. . .

[Trial Court]: . . . . But in a Chancery Court order you changed your name back to Wagster.

. . .

[Attorney Coronado]: That's true, Your Honor, under the decree. She has taken the name back, but she hasn't officially changed it and has taken it.

. . .

[Trial Court]: My question is, . . . how can you show us the best interest of the child [is] to have the name Hart rather than Lewis . . . [?] Because how could it be in the best interest for her to have the name of a person that she has —

[Mother]: We plan to get remarried.

[Trial Court]: Wait a minute. I'm asking your attorney. I just want you to explain that.

. . .

Don't you think the burden of proof is going to be on her to show that it's in the best interest for that child to keep a name of a person that she was married to and then separated from?

[Attorney Coronado]: No, sir, Your Honor, I respectfully disagree with that. . . .

. . .

[T]he burden is on the respondent who wants to change the name, to show the Court that it's in the child's best interest.

Thus, Mother's attorney attempted to correct the trial court's misperception that Mother had the burden of proving that changing the child's name to "Lewis" would be harmful to the child. As discussed below, this attempt proved to be unavailing.

Attorney Coronado then argued that the trial court's order changing the child's name to "Lewis" must be vacated, because Mother did not request a name change in her petition and Father submitted no evidence at the December 6 hearing showing that a name change would be in the child's best interest. The trial court rejected this argument. It stated that the child's name should be changed to either "Wagster" or "Lewis" but not to "Hart," and held that Mother had to prove that changing the child's surname to "Lewis" would cause substantial harm.

After that exchange, Mother was sworn and permitted to testify. Mother's testimony did not get past the statement of her name before a dispute erupted. Asked to state her name, Mother responded, "Casee Wagster Hart." This resulted in a threat of incarceration for contempt of court:

> [Attorney Kinton]: Object to that, if the Court, please, that ain't her name.
>
> [Mother]: That is my name.
>
> [Trial Court]: Do you want to go to jail?
>
> [Mother]: No, sir, I don't.
>
> [Trial Court]: Keep your mouth shut and answer the questions now. Now, go ahead and answer the question. I'll accept the Wagster Hart for right now. Understanding that you could be found in contempt of court.
>
> [Mother]: Under my —
>
> [Trial Court]: . . . . If there's a Chancery Court that ordered her name to be changed to Wagster and she continues to hold out that it's Hart, then I'm going to have to file and hold her in contempt of court. . . . I'm expecting her to use Wagster.

When Attorney Coronado sought to elicit testimony from Mother about why she had not yet officially changed her name back to "Wagster," Attorney Kinton objected and the trial court admonished Attorney Coronado not to ask Mother any questions that "would lead her into committing a contempt of [the] court" that entered the divorce decree.[3]

After addressing the name-change issue, Attorney Coronado presented Mother's argument that the child support arrears and the monthly child support award should also be vacated. Mother acknowledged that, in the first hearing, the attorneys agreed to child support issues, but she argued that the order should be vacated because Attorney Smith had a conflict and could not represent Mother's interests. Mother testified that Attorney Smith "withdrew, and he was not my lawyer. I had no representation. . . . I had no representation the day that my daughter's name supposedly got changed, I had no representation." She said that, in that hearing, she agreed to the child support amount only because she wanted to be able to see her daughter.

The transcript of the hearing shows that the trial court treated Mother's motion to vacate the prior child support award as a petition to modify support. The trial court told Mother's counsel that Mother would need to submit proof to establish a significant variance in order to have the first order modified. The trial court asked Attorney Coronado whether Mother had any proof to support her claim: "Well, it's your motion to modify the child support. You should have the proof with you to show that what he is entering is not right." Attorney Coronado responded that Mother did not have any proof to support modification because Mother was asking the trial court to vacate the December 14 order and then permit discovery on the support issue. Despite the propriety of counsel's argument, the trial court's response was less than decorous:

> [Trial Court]: Look, look. *Lady*, this Court has been doing child support for 16 years. This lady here [(referring to the Assistant Attorney General who was present at the hearing)] has been doing child support in this court four or five years. The child support rules and regulations are very, very simple. You plug everything into a computer. You put the information out there, and it's going to kick out the right child support.

(Emphasis added). The trial court then indicated that it would not permit Mother to challenge the December 14 child support award "without showing some kind of evidence that the order is wrong, or that it needs to be modified. . . . [I]f you want to modify the order, then present the evidence that shows that it needs to be modified."

---

[3]Mother's divorce decree was entered into evidence as Exhibit 1.

At the conclusion of the hearing, the trial court surmised that the attorneys at the first hearing had agreed on child support and other issues. Attorney Coronado disagreed, pointing out that Attorney Smith had made his conflict of interest known to the trial court at the beginning and at the end of the December 6 hearing. She said that Attorney Smith "wasn't representing Ms. Hart and he filed a motion to withdraw, that wasn't heard at that point. But [Mother] went on effectively without representation at that hearing." The trial court responded, "Well, I don't think that's what happened. Well, not in my mind."

At the conclusion of the April 25 hearing, the trial court issued an oral ruling from the bench denying Mother's petition in its entirety. The trial court said that Mother had divorced Mr. Hart and changed her name back to "Wagster," and that DNA testing established Father as the biological father of the child, so "[t]he child is either Wagster or Lewis. There is no legal connection between the Harts and the child. The Court orders that the child's name be changed to . . . Lewis." It said that the original "agreed" child support order, including the retroactive child support award, would remain in effect until one party or the other filed a petition to modify it. On May 14, 2012, the trial court entered a written order consistent with its oral ruling. After that order was entered, Mother filed a timely appeal.

While the appeal was pending, and long after the trial court's record had been forwarded to the appellate court, the trial court entered a lengthy *sua sponte* order in this case. On March 7, 2013, almost a year after the notice of appeal was filed, the trial court entered an 18-page order entitled "Amended Finding of Fact and Response to the Finding of Fact and Order of April 25, 2012."[4]

In the 18-page *sua sponte* order, the trial court explained that it had "gone back and listen[ed]" to the hearings of December 6, 2011 and April 25, 2012, and that those recordings caused the trial court to realize that the title of the December 14, 2012 order should have been "Agreed Order," instead of simply "Order." It stated: "The December 6, 2011 [order] was an Agreed Order proceeding and was not a contested hearing as alleged by Mrs. Coronado in her motion to [v]acate."

In this order, the trial court described in detail the trial court's view of what occurred at those two hearings, revealed the trial court's impressions and reasons that do not appear in the transcripts of the proceedings, and responded to the arguments made by Mother in this appeal. The trial court explained: "It was evident to the Court that most of the paternity

---

[4]The trial court indicated in the *sua sponte* order that it was prompted by this Court's decision in ***In re Conner S. L.***, No. W2012-00587-COA-R3-JV, 2012 WL 5462839 (Tenn. Ct. App. Nov. 8, 2012), in which the appellate court remanded the case to the trial court for findings of fact pursuant to Tennessee Rule of Civil Procedure 52.01.

issues were not going to be contested. I also realized that Mr. Smith and Ms. Casee Wagster Hart needed at least an agreed order to complete her Divorce in Dyer County." The order said that this was the trial court's reason for continuing with the "agreed order proceeding" on December 6, 2011. The order commented that the trial court "would have stopped all the proceeding if Mr. Smith had ask[ed] to withdraw or made a motion to continue the case," or had Mother asked for time to get another attorney. Because no such objection was made, the trial court explained, it went ahead and decided all issues in accordance with the paternity statute.

On April 3, 2013, Mother filed a motion in this Court to at once supplement the appellate record with the trial court's March 7, 2013 order and then strike the order for lack of subject matter jurisdiction. On April 4, 2013, this Court entered an order directing Father to file a response to Mother's motion and giving the parties additional time at oral argument to address the motion. On April 10, 2013, Father filed a response as directed. We resolve Mother's motion below as part of this appeal.

ISSUES ON APPEAL AND STANDARD OF REVIEW

Mother raises numerous arguments on appeal, challenging the trial court's May 14, 2012 denial of her motion to vacate. We summarize those issues as follows:

> 1. Whether the trial court erred in failing to continue the December 6, 2011 hearing, based on Attorney Smith's announcement of his "obvious conflict"?
>
> 2. Whether the trial court erred at the December 6, 2011 hearing in:
>
> > • changing the child's surname to "Lewis," when a name change was not specifically pled, and no evidence was submitted regarding the best interest of the child as required under *Sullivan v. Brooks*, No. M2009-02510-COA-R3-JV, 2011 WL 2015516 (Tenn. Ct. App. May 23, 2011); furthermore, whether the trial court erred in failing to issue findings of fact on this issue;
> >
> > • relying on paternity tests to establish paternity, when those tests were never produced at the hearing, introduced as an exhibit, or filed in the record;

-13-

- failing to award Mother retroactive child support from the date of the child's birth, failing to include in the order the total amount of retroactive child support that would have been due under the child support guidelines, and in failing to make findings of fact and conclusions of law to support the basis for the court's deviation from the guidelines;

- failing to take any evidence regarding Mother's expenses incurred in connection with her pregnancy and recovery from child birth pursuant to Tennessee Code Annotated § 36-2-311; and in

- dictating to the parties a "shared parenting plan" and "child support worksheet" which were not approved or agreed to by the parties in writing?

3. Whether the trial court erred in failing to either secure Mother's signature on the December 14, 2011 order or include on the order a certificate of service showing that it was mailed to her, given the fact that Attorney Smith did not represent her at the hearing?

4. Whether the trial court erred at the April 25, 2012 hearing in:

- failing to require Father to produce evidence that changing the child's name was in the child's best interest;

- failing to make findings of fact and conclusions of law regarding whether the child's name change was in the child's best interest, deciding that the relevant *Sullivan* factors were inapplicable in this situation, and in deciding that the child's name was to be changed to either Wagster or Hart; and in

- failing to hold that Father had the burden of proof to establish that the name change from Hart to Lewis was in the child's best interest?

We review the trial court's findings of fact *de novo* on the record, presuming those findings of fact to be correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *see Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Generally, we "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). There is no presumption of correctness with respect to the trial court's conclusions on matters of law or on its application of the law to the facts. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

Mother's motion to vacate the December 14, 2011 order was based on Rule 34 of the Tennessee Rules of Juvenile Procedure. Rule 34 permits relief from a final juvenile court order based on (a) clerical mistakes, (b) fraud or mistake, or (c) changed circumstances affecting the best interest of the child. The Rules of Juvenile Procedure also provide: "The Tennessee Rules of Civil Procedure shall govern all . . . paternity cases." Tenn. R. Juv. P. 1(b). Under the Tennessee Rules of Civil Procedure, the counterpart to Rule 34 is Rule 60, which governs "Relief From Judgments or Orders." Rule 60.02 provides relief from judgments based on five grounds:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. A motion under this rule may be filed "within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." *Id.*

We review a trial court's denial of a motion for relief from judgment — under either Rule 34 of the Rules of Juvenile Procedure or Rule 60.02 of the Tennessee Rules of Civil Procedure — under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). In *Discover Bank*, the Supreme Court explained this standard of review:

> Abuse of discretion is found " 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly

erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

*Id.* Thus, we must review the record to determine whether the trial court abused its discretion in denying Mother's motion to vacate the December 14, 2011 judgment.

## ANALYSIS

Mother raises numerous issues on appeal, several of which appear to have merit. Our review of the record also reveals several issues that likely fall in the category of "plain error." *See Conservatorship of Acree v. Acree,* No. M2011-02699-COA-R3-CV, 2012 WL 5873578, at *5 (Tenn. Ct. App. Nov. 20, 2012) (appellate court has discretion to take notice of "plain error" and consider issues that were not properly presented on appeal, in order to achieve fairness and justice) (citations omitted). We perceive that the first issue Mother raises, the trial court's failure to grant a continuance once Mother's attorney disclosed a conflict of interest, is determinative of the appeal.

### Failure to Grant a Continuance

Mother first argues that the trial court erred in refusing to set aside the December 14, 2011 order, because the December 6 hearing should have been continued after Attorney Smith announced an "obvious conflict" in continuing to represent Mother.[5] She argues that she suffered extreme prejudice when the trial court ignored Attorney Smith's announcement and proceeded to decide all of the issues as though Attorney Smith still represented Mother. As soon as the conflict was revealed, Mother argues, the trial court should have allowed Attorney Smith to withdraw and continued the hearing to give Mother the opportunity to

---

[5]We consider this issue as "any other reason justifying relief" pursuant to Rule 60.02(5) of the Tennessee Rules of Civil Procedure, and as "plain error" which we consider in order to achieve fairness and justice. *See Conservatorship of Acree,* 2012 WL 5873578, at *5 (citing Rules 13(b) and 36 of the Tennessee Rules of Appellate Procedure; *Heatherly v. Merrimack Mut Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000)).

obtain new counsel. She notes that there was no emergency or any other reason to deny a continuance, and that Father's counsel even agreed to a continuance. Mother claims that the trial court's refusal to vacate the December 14 order under these circumstances was an abuse of discretion.

In response, Father argues that the trial court was not obligated to continue the case because a continuance was not requested, and the trial court was not required to allow Attorney Smith to withdraw when he did not request permission to do so. Father claims that Attorney Smith fully represented Mother's interests at the hearing, and that Mother did not voice any objection to his participation in the hearing. The trial court committed no abuse of its discretion, says Father, in failing to continue a case *sua sponte* when the parties fully participated in the proceedings without objection. Father claims that Mother must carry a heavy burden in order to have the trial court's December 14, 2011 order vacated, and that she failed to show that the trial court abused its discretion in declining to do so. Thus, Father argues, the trial court did not err in failing to continue the case, and it did not commit reversible error in refusing to vacate the December 14, 2011 order on that basis.

The undisputed facts in the record establish that Attorney Smith correctly stated at the December 6, 2011 hearing that he had a genuine and "obvious" conflict of interest — he had previously consulted with both Mother and Father about the paternity action at a time when they agreed on all of the issues, but by the time of the hearing the parties had separated and were no longer in agreement, and Attorney Smith found himself in an adversarial position against Father. Attorney Smith correctly told the trial court that he could not remain in the case because of the conflict. The Rules of Professional Conduct that govern attorneys provide that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Tenn. Sup. Ct. R. 8, Rule 1.7. "[I]f an attorney actively represents conflicting interests, prejudice is presumed." *Netters v. State*, 957 S.W.2d 844, 847 (Tenn. Crim. App. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *State v. Thompson*, 768 S.W.2d 239, 245 (Tenn. 1989)). Thus the record shows definitively that, by the time of the December 6, 2011 hearing, Attorney Smith had developed an "obvious conflict" of interest that precluded him from continuing to represent Mother.

Instead of stopping the hearing when Attorney Smith disclosed his conflict and giving Mother an opportunity to hire a new attorney, the trial court steamrolled through it. At first the trial court seemed inclined to decide only issues on which the parties agreed or that they asked him to decide. That quickly evaporated, and the trial court proceeded to decide all of the issues in the case, contested or not, explaining, "There is no sense in us coming back if we can get it done right now." The trial court batted aside all objections or concerns, and even suggestions that it designate its order as temporary. Father contends that this was not

error because Attorney Smith did not make a formal motion to withdraw at that point and Mother did not voice an objection.

Without question, once Attorney Smith disclosed to the trial court that he had developed a conflict of interest that precluded him from continuing to represent Mother, the trial court should have continued the hearing and should not have considered any issues on the merits. The trial court was not even in a position at the hearing to determine which issues were uncontested, given Mother's nebulous circumstances. Indeed, Mother's situation at the December 6, 2011 hearing was neither fish nor fowl; Attorney Smith could not represent her because of his conflict of interest, but Mother would not have perceived herself as *pro se* or self-represented, because Attorney Smith was present at the hearing and participating. For this reason, Father's argument that Mother was obliged to object at the hearing is without merit.

The trial court's error in proceeding with the December 6, 2011 hearing was only compounded by its handling of Mother's post-judgment petition to vacate. Instead of recognizing that the prior order should have been vacated, the trial court chose to respond to the petition as though the December 6 hearing had been a proper evidentiary hearing at which Mother was represented by an attorney with no conflict of interest.

After a careful review of this record, we must hold that, when Attorney Smith disclosed to the trial court that he had developed a conflict of interest in representing Mother, it became incumbent upon the trial court to stop the December 6 hearing and continue the case so that Mother could either retain new counsel or decide to proceed *pro se.* On this basis, we hold that the trial court abused its discretion in denying Mother's motion to vacate and reverse the trial court's denial of Mother's motion to vacate the December 14, 2011 order.

### March 7, 2013 Order

As we have stated, Mother filed a motion with this Court, asking us to first supplement the appellate record with the trial court's *sua sponte* order, the March 7, 2013 "Amended Finding[s] of Fact," and then strike the order. Mother argues that the order should be struck because the trial court no longer had jurisdiction over the case when the order was entered.

In response, Father does not oppose Mother's motion to include the March 7, 2013 trial court order in the appellate record, but he opposes Mother's request that we strike it. Father contends that the order is properly includable in the appellate record. Father characterizes the *sua sponte* order as merely the trial court's attempt to correct a mistake, because the December 14, 2011 order was mistakenly entitled "Order" instead of "Agreed Order." Under Rules 24(e) and (g) of the Tennessee Rules of Appellate Procedure, Father argues, the

belated order is necessary to "convey a fair, accurate and complete account of what transpired in the trial court."

We must respectfully disagree with Father's characterization of the trial court's March 7, 2013 order as merely an attempt to correct a clerical error. While the order does indeed say that the December 14, 2011 order should have been entitled an "Agreed Order," the 18-page order in no way resembles the correction of a clerical error. The order clearly addresses at length the substance of the issues on appeal.

Once Mother's notice of appeal was filed, the trial court was without jurisdiction to enter the March 7, 2013 order, *sua sponte* or otherwise.[6] ***First American Trust Co. v. Franklin-Murray Dev. Co., L.P.***, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001) ("It should now be plain that once a party perfects an appeal from a trial court's final judgment, the trial court effectively loses its authority to act in the case without leave of the appellate court.") (footnote omitted)). Thus, the trial court's March 7, 2013 order was void *ab initio*.

Therefore, we grant Mother's motion to supplement the appellate record with the trial court's March 7, 2013 order. We also vacate the March 7, 2013 order for lack of jurisdiction.

## Attorney Fees

Father requests that he be awarded his appellate attorney fees based on Mother's frivolous appeal. Based on our decision herein, this request is denied.

## Directions on Remand

As noted above, we have determined that the trial court should have stopped the proceedings once Attorney Smith disclosed that he had a conflict of interest in continuing to represent Mother, and so we must vacate all of the trial court's actions and orders, starting with the oral

---

[6]We recognize that "an appeal does not transfer to the distant appellate court the continuing supervision of the welfare of the child. Pending appeal, the day to day supervision of [the child's welfare] must be left to the Trial Judges. . . ." ***In re E.J.M.***, 259 S.W.3d 124, 135 (Tenn. Ct. App. 2007) (quoting ***Mittwede v. Mittwede***, 490 S.W.2d 534, 536 (Tenn. Ct. App. 1969)). "Thus, if there are new facts and changed conditions since the decree, the trial court may issue any orders necessary for the welfare of the minor child, based on the new circumstances." ***Id.*** (citation omitted). The trial court's March 7, 2013 order, however, addressed only matters that preceded the appeal; it did not address new or changed circumstances and did not arise out of the trial court's continuing jurisdiction over the welfare of the subject child.

rulings made at the December 6, 2011 hearing and everything that followed.[7] Therefore, we must remand the case for further proceedings.

We deem it prudent in this case to have the case transferred to another trial judge on remand. We have done so on occasion, where circumstances warrant. *See, e.g., Rudd v. Rudd*, No. W2011-01007-COA-R3-CV, 2011 WL 6777030, at \*7 (Tenn. Ct. App. Dec. 22, 2011); *Radebaugh v. Radebaugh*, No. M2005-02727-COA-R3-CV, 2006 WL 3044155 (Tenn. Ct. App. June 29, 2006). "[L]itigants are entitled to the 'cold neutrality of an impartial court' and have a right to have their cases heard by fair and impartial judges." *Lofton v. Lofton,* 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) (quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967))).

In this case, the trial court's 18-page *sua sponte* March 7, 2013 order contained much more than recitation of evidence or arguments, factual findings or conclusions of law. The order is replete with personal commentary and positions that are contrary to the transcript of the proceedings that is contained in the appellate record. It verges well over the line into advocacy, addressing the issues raised in this appeal, refuting the arguments of Mother's counsel, and defending the validity of the trial court's orders that are the subject of the appeal. We believe, under the circumstances, that the trial judge's "impartiality can reasonably be questioned." *Id.* at 918. Consequently, on remand, we direct the trial court to request the Chief Justice of the Tennessee Supreme Court to designate another judge to hear and determine the case.

On remand, the trial judge to whom the case is reassigned must "go back to square one" and consider Mother's petition anew. Obviously, however, "events and lives have not stood still while this [paternity] dispute has been in the courts." *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at \*4 (Tenn. Ct. App. July 21, 1999). For example, the trial court's order required Mother to change Daughter's last name to "Lewis" on her birth certificate. That order, however, has been vacated, so the new trial judge may consider the parties' positions on this issue,[8] as well as the other issues in the case.

---

[7]We do not vacate the order permitting Attorney Smith to withdraw from representing Mother.

[8]Because we have vacated the order requiring the change of the child's surname from "Hart" to "Lewis," the child's surname is "Hart," as shown on the original birth certificate. On remand, Father will have the burden of demonstrating that changing the child's name from "Hart" to "Lewis" would further the child's best interest, in light of the criteria set out in *Sullivan*. *See Sullivan*, 2011 WL 2015516, at \*1.

## CONCLUSION

The decision of the trial court is reversed, and the trial court's December 14, 2011 order and all orders thereafter are vacated, with the exception of the order permitting Attorney Smith to withdraw from representing Appellant Casee Wagster Hart. The cause is remanded to the trial court with directions to request the Chief Justice of the Tennessee Supreme Court to designate another judge to conduct further proceedings consistent with this opinion. Costs on appeal will be taxed to Appellee Max Randall Lewis, Jr., for which execution may issue, if necessary.

 

_____
HOLLY M. KIRBY, JUDGE