IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2025 Session

**NONA G. ROGERS v. MICHAEL L. ROGERS**

**Appeal from the Circuit Court for Bradley County**
**No. V-21-479          Michael J. Dumitru, Judge[1]**

_____

**No. E2024-01486-COA-R3-CV**
_____

Following a divorce, a husband appeals the trial court's classification of marital assets, division of marital assets, and alimony determination. Discerning no error, we affirm the trial court's order. We grant the wife's request for reasonable attorney fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and VALERIE L. SMITH, JJ., joined.

Henry Franklin Chancery, Cleveland, Tennessee, for the appellant, Michael L. Rogers.

Mark Randall Sellers, Cleveland, Tennessee, for the appellee, Nona G. Rogers.

**OPINION**

**I.      BACKGROUND**

After a fifty-six-year marriage, Defendant-Appellant Michael Rogers ("Husband") and Plaintiff-Appellee Nona Rogers ("Wife") divorced on the ground of Husband's inappropriate marital conduct. The parties separated abruptly in July 2021 when their adult granddaughter accused Husband of touching her inappropriately. Husband incurred criminal charges, spent $25,000 of marital funds for his legal defense, and eventually pleaded guilty to sexual battery and harassment. An order of judicial diversion was entered on August 28, 2023. The divorce proceeded to trial on July 9, 2024. Each party testified. Husband was then seventy-six years old and Wife was then seventy-two years old.

_____
[1] Sitting by interchange.

Before the separation, the parties enjoyed a strong marriage and close bonds within the family. They provided full-time care for their young grandson, but he was taken away from them after the incident leading to the separation. Wife testified that these terrible events destroyed part of her identity. Wife was compelled to leave the marital residence and move to her adult son's home where she was still living at the time of the divorce.

The parties held gainful jobs during their marriage. Husband retired in 2014 after a career in manufacturing. Wife retired early in 2005 with husband's agreement after a career as a cashier, administrative assistant, and judicial assistant. They agree that Wife has health issues and that neither of them should return to the workforce after being retired for over two decades. Throughout the marriage, the parties pooled all of their money in a joint bank account and withdrew it as needed to pay for expenses.

Since Husband's retirement, the parties have lived off social security and retirement benefits, all deposited into the joint bank account. Wife's income and expense statement reflects that she receives $1,794.63 in net monthly income from the sum of her Tennessee Consolidated Retirement System benefit and her Social Security benefit. Wife's income and expense statement reflected $8,311.00 in monthly expenses, both current at the time of trial and projected. Husband receives $5,785.63 in monthly income from Social Security, retirement benefits from his previous employers, and distributions from a Fidelity IRA. His expenses of $1,920.57 include the costs of Wife's cell phone and the insurance on her automobile.

After their July 2021 separation, Husband continued to live in the marital residence and paid for all of its expenses and improvements, including property tax and costly new heating and air conditioning units. Wife's mother resided with the parties in their marital home before she passed away. Wife's mother gave Wife three monetary gifts. The record reflects that both parties referred to these gifts as Wife's inheritance. In August 2016, Wife's mother gave her $134,173.57. Soon thereafter, Wife asked Husband to deposit this gift into their joint bank account. She testified:

> When [Husband] went to deposit the check, he came home with this annuity plan he wanted me to sign and I refused to sign it. My mother was in failing health at the time and I didn't want that money tied up in case I needed it to take care of her. And we had a big argument over it and I just told him no and he talked to the bank and the bank ended up calling me.

Within approximately three weeks of Wife's receipt of her mother's gift, the parties chose a different $150,000 jointly-titled annuity that would not incur a penalty for early withdrawal in case Wife needed the money. Undisputedly, the parties purchased this annuity using the $134,173.57 that Wife received from her mother plus $15,826.43 from the parties' joint bank account. When the annuity matured after the parties' separation,

Wife withdrew the entire amount and deposited it into a separate account "for safekeeping" and did not touch it after that.

In July 2017, Wife received an inheritance check of $41,000 which she deposited into the joint bank account. In March 2018, Wife's received an inheritance check of $29,000. The next month, Wife purchased a $32,000 minivan using the $29,000 from her mother and $3,000 from the parties' joint bank account.

Following trial, the court entered a final decree of divorce on September 5, 2024. In equitably dividing the marital property, the court analyzed the relevant factors as stated in Tennessee Code Annotated section 36-4-121(c). The trial court found that the parties accumulated and shared various assets during their long marriage and that each person meaningfully contributed to the marital estate through employment and other efforts. The trial court awarded Husband exclusive possession of the marital residence and awarded Wife $160,000, representing forty percent of its equity. As stipulated by the parties, the court awarded Wife the Fidelity IRA valued at $285,974.

As to the $150,000 jointly-titled annuity, the court considered Wife's actions surrounding the receipt and investment of the large gift from her mother. The court concluded that $134,173.57 was received directly from Wife's mother as Wife's inheritance and was, therefore, Wife's separate property. The court classified the remaining $15,826.43 of the annuity as marital property.

The trial court found that Wife deposited the $41,000 gift from her mother into the joint bank account, took no steps to segregate it, and that it was "inextricably mingled with the other funds in the joint account, and therefore constitutes marital property." As to the third gift from her mother, the trial court concluded that the $29,000 Wife used to purchase her minivan was her separate property. In sum, of the $204,173.57 Wife received from her mother, the trial court classified $163,173.57 as Wife's separate property.

The trial court applied the relevant statutory factors set forth in Tennessee Code Annotated section 36-5-121(i), particularly need and ability to pay, when considering Wife's alimony *in futuro* request of $6,200 per month. The trial court determined that, between her existing Social Security, retirement benefit, and the awarded monthly Fidelity IRA benefit, Wife's monthly income would increase to nearly $3,000. The trial court ordered Husband to pay Wife $1,000 monthly alimony *in futuro*. Husband appealed.


## II.    ISSUES

Husband raises three issues on appeal:

A. Whether the trial court erred in its classification of marital and separate assets making the property division unequitable.

B. Whether the trial court erred in its consideration of the alimony factors in awarding Wife alimony *in futuro* in the amount of $1,000.00 per month.

C. Whether the trial court erred in failing to specify the conditions for termination or modification of Wife's alimony *in futuro* award.

As Appellee, Wife raises the following issue:

Whether the trial court erred in failing to award attorney fees and costs to Wife.

## III.    STANDARD OF REVIEW

"[T]he appellate courts review a trial court's decisions classifying property using the familiar standard of review in Tenn. R. App. P. 13(d)." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007).  This action was tried by the court without a jury, so we review the trial court's findings of fact de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009).  We review the trial court's conclusions of law de novo with no presumption of correctness.  *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).  The trial court has broad discretion in fashioning an equitable distribution of marital property, and an appellate court will defer to a trial court's distribution unless it is inconsistent with the statutory factors or is not supported by a preponderance of the evidence.  *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013).

"The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006).  We "decline to second-guess a trial court's decision [about spousal support] absent an abuse of discretion.  An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citations omitted).

## IV.    DISCUSSION

### A.

On appeal, Husband contends that the trial court erroneously classified the $134,173.57 gift and the $29,000 gift from Wife's mother as Wife's separate property. He presses that "Wife commingled or transmuted these contributions into marital property" and "offered no proof of an agreement between the parties that the $134,173.57 contribution and the $29,000.00 contribution would remain Wife's separate property after the deposit into the parties' joint account."

In all divorce cases, after classifying the parties' property, the trial court is directed to "[e]quitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1); *see generally Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014); *Lofton v. Lofton*, 345 S.W.3d 913, 923 (Tenn. Ct. App. 2008). An equitable division of marital property does not require that the property be divided equally. *Luplow*, 450 S.W.3d at 109–10 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)). Nor does it require that each party receive a share of every item classified as marital property. *Morton v. Morton*, 182 S.W.3d 821, 833–34 (Tenn. Ct. App. 2005) (quoting *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998)). "The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009).

The statute defines "marital property," in relevant part, as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b). "Separate property" is defined, in relevant part, as "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." *Id*. The record leaves no doubt that the monies from Wife's mother were gifts solely to her and/or her inheritance. Both parties referred to the monies as Wife's inheritance, Wife proved that the largest gift was earmarked for her upon closure of her mother's bank account, the two smaller gifts were issued as checks written solely to Wife, and, at oral argument, Husband's counsel characterized the money as gifts from Wife's mother to her. All three amounts—$134,173.57, $41,000, and $29,000—were properly classified as Wife's separate property in the first instance. The question is whether any of these gifts became marital property subject to equitable division through transmutation or commingling. As Tennessee courts have recognized:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.... [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these

doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (brackets and ellipses in original) (citations omitted).

Here, the evidence established that Husband and Wife had one joint bank account during the marriage. Although the $134,173.57 gift was initially deposited into the parties' joint bank account, soon afterward, on Wife's insistence, they used the gift to purchase an annuity with no early withdrawal penalty because Wife "didn't want that money tied up" in case she needed it to care for her mother. Once the annuity matured, Husband and Wife had separated. At that point, Wife withdrew the entire matured amount and deposited it into a separate account "for safekeeping," pending the divorce. Wife properly testified that the $15,826.43 of marital money used to purchase the $150,000 annuity was subject to equitable division. These facts do not evidence an intention that the $134,173.57 gift to Wife was meant to become marital property. The parties did not spend this gift in the way that they did with the $41,000 gift that Wife took no steps to segregate; it simply remained in the annuity. The evidence in the record does not preponderate against the trial court's implicit finding that tracing applies to the $134,173.57 gift, and it was properly classified as Wife's separate property. Soon after receiving it, Wife used the $29,000 gift plus $3,000 from the parties' joint bank account to purchase a minivan which, by the time of trial, remained her primary vehicle. On appeal, Husband argues that the minivan became a marital asset because Wife never expressed her intent that it remain her separate property. Upon review, the record confirms essential fairness in the trial court's classification of property and equitable distribution of marital property, so we are disinclined to second-guess the trial court on the issue of the 7-year-old minivan. Accordingly, we affirm.

B.

Next, Husband argues that the trial court's alimony *in futuro* award of $1,000 monthly to Wife is inequitable and overstates Wife's need and his ability to pay. He states that the trial court did not specifically find Wife to be an economically disadvantaged spouse. Husband suggests alimony *in solido* would be more appropriate in this case. Tennessee Code Annotated section 36-5-121(i) directs the courts to consider all relevant factors "[i]n determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment." Tenn. Code Ann. §36-5-121(i). The statute lists nonexclusive factors to be considered including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). It is well settled that the two most important factors to be considered in any spousal support determination are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn. 2004).

Here, the trial court expressly considered the parties' marriage of over fifty years, the fact that neither Husband nor Wife can now obtain or sustain gainful employment due to their ages and how long they have been retired, Wife's chronic health problems, their financial resources from Social Security and retirement benefits, their separate assets, and Husband's conduct which precipitated the divorce. In particular, the trial court focused on Wife's need and Husband's ability to pay:

> The Court finds that Wife does have a need for income although her circumstances may be less dire than they appear on her [income and expense statement], which contains several projected expenses unsupported by any documentary evidence. The Court further finds that Husband has an ability to pay, as evidenced by his [income and expense statement's] reflection of a monthly surplus of $3,865.06 that will increase to over $4,000.00 when considering the expenses allocated to Wife will disappear after the divorce.

> However, the Court's distribution of the marital assets [ ], taken together with the Court's conclusion regarding the annuity, weighs on both Wife's need and Husband's ability to pay. Specifically, Wife will receive a lump sum of at least $294,173.57, comprised of the $134,173.57 in separate property associated with the annuity and $160,000.00 for her share of the Marital Residence. Further, Wife will receive a total of nearly $3,000.00 per month from her monthly social security benefit, monthly [Tennessee Consolidated Retirement System] benefit, and monthly benefit from the Fidelity IRA. In light of these facts, the Court finds that the requested amount of [$6,200.00] alimony *in futuro* is not appropriate. The Court does, however, find that Wife will still have a need (and Husband a corresponding ability to pay) some amount of money. The Court therefore orders that Husband pay directly to Wife the monthly amount of $1,000.00 as alimony *in futuro*.

Alimony *in futuro* "may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-121(f)(1); *see Gonsewski*, 350 S.W.3d at 107–08 (Tenn. 2011). Upon review, we conclude that the trial court properly applied the correct legal standards in considering Wife's request for alimony *in futuro*. Wife's need and husband's ability to pay are established by the evidence in the record. Although fault is a factor to be considered, the trial court did not emphasize Husband's fault in the demise of the parties' lengthy marriage. We disagree with Husband's assertion that the trial court failed to consider the effect of his payment of forty

percent of the marital home's equity to Wife simultaneously with the alimony award which was significantly less than what Wife requested. We discern no abuse of discretion in the trial court's alimony determination and, accordingly, affirm.

C.

Finally, Husband asserts that the trial court's order should have "state[d] specifically what the change of circumstances would be for future modification" of the alimony *in futuro* award. "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). Husband notes that "[t]he Fidelity IRA will require Wife to receive mandatory distributions in May 2025 when Wife is the age of seventy-three (73). These distributions might significantly affect Wife's need [for alimony]." At the same time, he notes that the parties' current circumstances might not change. A petition for modification of alimony will be an appropriate means by which to address the various possibilities noted in Husband's brief, if and when they arise. We discern no error with the lack of a built-in modification of alimony at the outset of the parties' divorce decree.

D.

Wife assigns as error the trial court's denial of her request for attorney fees.[2] "[A]n award of attorney's fees in a divorce case constitutes alimony *in solido*." *Gonsewski*, 350 S.W.3d at 113 (citing Tenn. Code Ann. § 36-5-121(h)(1)). Whether to award attorney fees rests in the trial court's discretion. *Id*. Here, the trial court balanced the relevant statutory factors and did not abuse its discretion in denying Wife's request for attorney fees at trial.

Wife also seeks an award of her attorney fees incurred in this appeal. "This decision is soundly within the discretion of this court." *Dover v. Dover*, No. E2019-01891-COA-R3-CV, 2020 WL 7224368, at *16 (Tenn. Ct. App. Dec. 8, 2020) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In exercising our discretion, we consider, *inter alia*, "the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). Under the circumstances of this case, we grant Wife's request for attorney fees incurred on appeal, the amount of which the trial court shall determine upon remand.

---

[2] Tennessee Code Annotated section 36-4-121(b)(1)(B) now includes within the definition of marital debt, "unpaid attorney fees and expenses incurred in connection with the [divorce] proceedings through the date of the final hearing." This amended section was not in effect at the time of the divorce complaint, so it is not applicable to this action. *See* 2022 Tennessee Laws Pub. Ch. 762 (S.B. 2385).

## V.    CONCLUSION

We affirm the judgment of the trial court.  The case is remanded for such further proceedings as may be necessary and consistent with this opinion, including a determination of the proper amount of appellate attorney fees and entry of judgment thereon.  Costs of the appeal are taxed to the appellant, Michael L. Rogers.

_____
JOHN W. McCLARTY, JUDGE